505 A.2d 511

**STATE of Maryland**

v.

**Janet SMITH.**

**No. 126, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 6, 1986.

490

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellant.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender and Julia Doyle Bernhardt, Asst. Public Defender, on brief), Baltimore, for appellee.

Argued before SMITH, Senior Judge, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

We hold in this appeal that a commissioner of the District Court of Maryland has the power to issue a statement of charges.

I

A civilian applied to the District Court of Maryland for a statement of charges. The application alleged that Janet Smith had stolen the applicant's bicycle, valued at $150. The applicant signed the application in the presence of the commissioner and affirmed that the allegations were true. The commissioner issued a statement of charges which charged Smith with the theft of the bicycle having a value of less than $300 in violation of Md.Code (1957, 1982 Repl. Vol.) Art. 27, § 342. He then issued a warrant for the arrest of Smith.

The warrant was duly executed and Smith was taken into custody. When the case came on for trial in the District Court, Smith demanded a jury trial, thereby depriving the District Court of jurisdiction. Md.Code (1973, 1984 Repl. Vol., 1985 Cum.Supp.) § 4–302 (e)(1) of the Courts and Judicial Proceedings Article. At arraignment in the Circuit Court for Baltimore City Smith made an oral motion to dismiss the statement of charges on the ground that the commissioner had no power to issue it. After receiving written memoranda and hearing oral argument, the court granted the motion and dismissed the statement of charges "without further prejudice to the prosecution." The State appealed. Smith prayed that we issue a writ of certiorari before judgment by the Court of Special Appeals. The petition presented one question:

Did the trial court correctly rule that District Court commissioners do not have the power to issue statements of charges?

We granted the petition and ordered the issuance of the writ. Smith then filed a motion to dismiss the appeal on the ground that the appeal was "not specifically provided for by law...." We denied the motion. Smith renews the motion in her brief. The motion is again denied.

## II

As Smith reads the opinion of the circuit court, one of the grounds of its decision to dismiss the charging document was that the issuance of a statement of charges by a commissioner of the District Court violates the due process clause of the Constitution of the United States. She claims that the State did not challenge this conclusion. She urges that the State has therefore waived any objection thereto. She asserts:

Because that conclusion, alone, supports the dismissal of the court below of charges against [Smith], the other issues raised by [the State] in this case need not be reached by the Court and for the Court to do so would be to render an advisory opinion.

She declares that "[t]he writ of certiorari should be dismissed as improvidently granted because [the State] has failed to challenge the holding of the court below that the United States Constitution precludes District Court commissioners from issuing statements of charges and warrants of arrest."

We think that a fair reading of the court's opinion indicates that the court did call upon the due process clause of the federal constitution. In doing so it relied on two decisions of the Supreme Court of the United States, *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972) and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). Although the State does not pinpoint due process as such in its brief, it

discusses *Shadwick* and *Coolidge* in arguing that the lower court's conclusions, in reliance on those cases, were incorrect. We think that the State has mounted a challenge to the conclusions reached by the court below, on the basis of due process, sufficient to preserve the matter for appellate review. Accordingly, we refuse to dismiss the writ of certiorari.

## III

When the trial judge decided that a commissioner of the District Court "has no constitutional power to issue and sign a 'Statement of Charges'," he said, in rendering the judgment, that the reason the power was lacking was

because such a power cannot be necessarily implied in the power to issue warrants of arrest contrary to the constitutional mandate of separation of powers in Maryland, and that such a confluence of powers would violate the principle of a 'neutral and detached judicial officer' as required by due process of law.

Smith reads this as advancing three reasons why the power to issue statements of charges will not bear constitutional scrutiny:

1) the Constitution of Maryland does not empower a commissioner to issue a statement of charges;

2) the doctrine of separation of powers forbids that function;

3) the exercise of the function violates the due process clause of the federal constitution.

We accept Smith's reading of the opinion as to the reasons on which the judgment was bottomed and approach our review of the propriety of the holding accordingly.

## (1)

The circuit court determined, and Smith argues, that the Maryland Constitution does not empower a commissioner of the District Court of Maryland to issue a statement of charges.

### (a)
### The Constitution

The District Court of Maryland came into being through the passage of a constitutional amendment proposed by Acts 1969, ch. 789, ratified 3 November 1970, and designated as §§ 41A–41I, Art. IV of the Maryland Constitution.[1] Section 41G requires that there "be district court commissioners in the number and with the qualifications and compensation prescribed by law," and spells out their authority in these terms:

> Commissioners may exercise power only with respect to warrants of arrest, or bail or collateral or other terms of pre-trial release pending hearing, or incarceration pending hearing, and then only as prescribed by law or by rule.

### (b)
### The Statute

The constitutional amendment was implemented by legislation enacted in 1970 and 1971 which established the District Court of Maryland. With respect to the commissioners required by the Constitution, the law, as it is now in effect, declares that "[t]here shall be in each county, at all times, one or more commissioners available for the convenience of the public and police in obtaining charging documents, warrants, or criminal summonses and to advise arrested persons of their rights as required by law." Md.Code (1973, 1984 Repl.Vol., Cum.Supp.1985) § 2–607(c)(3) of the Courts and Judicial Proceedings Article. Section 2–607(c)(1) provides that "[a] commissioner shall receive applications and

---

1. Acts 1969, ch. 789 repealed constitutional provisions concerning People's Courts, Municipal Courts and Justices of the Peace. For the history of the change from a lower court system inherited from the Fourteenth Century English to the present District Court of Maryland *see* the article by William H. Adkins, II, entitled The District Court: Past, Present, Future, which appeared in 3 Md. Bar Journal (no. 4) 6 (1971). The old system was a gallimaufry. "In general, each political subdivision went its own way and diversity, non-professionalism, political influence and confusion were the watchwords." *Id.* at 7.

determine probable cause for the issuance of charging documents." Subsection (c)(2) designates further duties:

A commissioner shall advise arrested persons of their constitutional rights, set bond or commit persons to jail in default of bond or release them on personal recognizance if circumstances warrant, and conduct investigations and inquiries into the circumstances of any matter presented to him in order to determine if probable cause exists for the issuance of a charging document, warrant, or criminal summons and, *in general, perform all the functions of committing magistrates as exercised by the justices of the peace prior to July 5, 1971.* (emphasis added)

### (c)
### *The Rules*

The 1970–1971 legislation was promptly implemented by rules adopted by this Court. Under those rules Chapter 700 of the Maryland District Rules govern the procedure in the District Court and before District Court commissioners in all criminal proceedings. MDR 701. Definitions were set out in MDR 702. Commissioners and District Court judges were considered to be "judicial officers." *Id.* at § f. " 'Charging document' means arrest warrant, summons to a defendant, statement of charges, citation, or criminal information." *Id.* at § a. "Citation" was defined in section c. The other four charging documents were not defined.

The court's functions with respect to a charging document, set out in MDR 706, generally could be exercised either by a District Court judge or a commissioner; the Rule speaks in terms of a "judicial officer." An application for an arrest warrant or summons had to be made in writing and signed by the applicant upon oath before a judicial officer. MDR 706, § a. An arrest warrant was to have been issued upon the application (except where a summons is required or permitted, *id.* at § c2.) if it appears to "the issuing officer" that there is "probable cause to believe that a crime has been committed and that the defendant has committed it." *Id.* at § c1. "Whenever a

defendant is arrested without a warrant, the officer in whose custody the defendant is placed for charging shall promptly prepare, or shall supervise the prompt preparation of, a statement of charges against the defendant." *Id.* at § c3. The defendant was given a copy of the warrant or the statement of charges. *Id.* at § d. Except for the command in a warrant to arrest the defendants and the command in a summons for the defendant to appear in court, the required contents of a warrant, a summons and a statement of charges were identical. Each of them was required by MDR 706, § e to contain:

(1) the name of the defendant, or, if his name is unknown, any name or description by which he can be identified with reasonable certainty; and

(2) a plain, concise and definite statement of essential facts constituting each offense charged, and each formal charge placed against the defendant; and

(3) the identity of the person upon whose application the charging document has been issued; and

(4) the date, time and place of execution or service, when such has been made; and

(5) the signatures of the officers issuing and executing the warrant or serving the summons, or the officer preparing the statement of charges....

The sixth item required in a warrant, a summons and a statement of charges was a statement addressed to the person arrested or summoned informing him of his right to a lawyer and his entitlement to be taken before a judicial officer. MDR 709 provided for the prompt appearance of a defendant before a commissioner or a District Court judge, and prescribed the duties of the judicial officer at that initial appearance. A determination of the defendant's eligibility for pre-trial release under MDR 777 (Bail and Pre-trial Release) was included as a duty. MDR 709, § c.

By order dated 31 January 1977, the Court of Appeals approved and adopted, effective 1 July 1977, a revision of Chapter 700 (Criminal Causes) of the Maryland Rules and

the Maryland District Rules recommended by the Court's Standing Committee on Rules of Practice and Procedure in its Fifty-Third Report, together with amendments made thereto by the Court. The rules recommended by the Committee were the product of a project that began in September 1973 "with the goal of reviewing and redrafting the rules in light of the numerous dramatic changes to criminal law in the last decade and to bring the rules into the Twentieth Century." Fifty-Third Report, *supra* at p. 1. MDR 701 reminded that the new rules, like the former rules, were to be "construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." We turn to those Maryland District Rules as revised, which relate to commissioners.

Definitions were set out in MDR 702. A District Court commissioner was still embraced within the meaning of "judicial officer." MDR 702, § f. " 'Charging document' means a written accusation alleging that a defendant has committed an offense.' *Id.* at § a. Expressly included in the definition is "a citation, an information, a statement of charges and a traffic adjudication docket." *Id.* "Arrest warrant" and "summons," which were included as charging documents in the former rules, were not mentioned. The Committee explained in its report to the Court of Appeals:

> The Committee had great conceptual difficulty with summonses and warrants in the District Court because in current practice these documents are, at times, used as charging documents. The problem was solved by separating charging documents from warrants and summonses in the Rule, and requiring a copy of the charging document to be attached to the warrant or summons as the case may be.

Fifty-Third Report, *supra* at p. 5. Each of the charging documents were defined, "citation" in § c, "information" in § e, "statement of charges" in § i, and "traffic adjudication docket" in § k. "Statement of charges," as defined in § i, "means a charging document in which the accusation is made by a peace officer or other person." " 'Warrant'

means a written order by a judicial officer directed to a peace officer commanding him to arrest the person named in it or to search for and seize property as described in it." *Id.* at § m. Under the revised rules the required contents of a charging document remained essentially the same as they were under the former rule. *Compare* the 1977 version of Rule 711 *with* the 1971 version of Rule 706, § e. MDR 711, § b2 commanded that "[a] statement of charges shall be signed by the *peace* officer [who files it] or by the judicial officer who files it, authorizing the filing of the charging document." (Emphasis and brackets in original).

MDR 710 prescribed the use of a charging document. Section a flatly declared that "[a]n offense shall be tried only on a charging document." Section d authorized an offense to "be tried upon a statement of charges filed pursuant to section a or b of MDR 720. . . ." MDR 720 set out the procedure for the issuance of a statement of charges after an arrest and before an arrest. Section a provided for the issuance of a statement of charges after arrest in this fashion:

> When a defendant is arrested without a warrant, the officer who has custody of the defendant shall forthwith cause a statement of charges to be filed against the defendant. For the purpose of considering pretrial release of the defendant, the officer shall at the same time, or as soon thereafter as is practicable, file a verified statement of facts showing probable cause that the defendant committed the offense charged.

Section b dealt with the issuance of a statement of charges before arrest:

> Upon a written application made therefor, a judicial officer may file a statement of charges against a defendant. The application shall contain a verified statement by a peace officer or a statement by a person, signed before the judicial officer under oath, which shows probable cause that the defendant committed the offense charged.

When a statement of charges was filed with the court, a judicial officer was required to issue a summons or an

arrest warrant as appropriate, MDR 720, §§ c and e, except when the defendant was in custody for the same offense. *Id.* at § h1. A copy of the statement of charges was to be attached to the summons and to the warrant, §§ c and d, and the summons or warrant and the statement of charges had to be served upon the defendant by a peace officer. *Id.* at § d. A warrant was executed by the arrest of the defendant. *Id.* at § f.

"A defendant who is detained pursuant to an arrest shall be taken before a [commissioner or District Court judge] without unnecessary delay...." MDR 723, § a. The procedure required of the judicial officer at the defendant's initial appearance was prescribed in MDR 723, § b at subsections 1–6. The duties of the judicial officer included determining the defendant's eligiblity for pretrial release, subsection 3 and, in connection therewith, when a defendant was arrested without a warrant, determining whether there was probable cause to believe that the defendant committed an offense. MDR 723, § b4.

Effective 1 July 1984, the Court of Appeals meshed, in major part, the two sets of rules which governed the courts of general jurisdiction and the Maryland District Court. With respect to criminal causes, it rescinded Chapter 700 in each of the Maryland Rules of Procedure and the Maryland District Rules and substituted for them rules under Title 4, Criminal Causes, of the "Maryland Rules." The rules in Title 4 govern procedure in all criminal matters in both the circuit courts and the District Court, except as otherwise specifically provided. Rule 4–101.

The new rules effect no changes from the rules as revised in 1977 which are relevant and material to matters of concern on this appeal. There is no substantive change in the definition of a "judicial officer," Rule 4–102(f), a "charging document," 4–102(a), a "statement of charges," 4–102(i), and a "warrant," 4–102(*l*). The requirements as to the content of a charging document remain essentially the same. Rule 4–202(a). Rule 4–202(b) only clarifies what was provided by MDR 711, § b2; the new rule simply

states: "A statement of charges shall be signed by a peace officer or by a judicial officer." Rule 4–201(a) perpetuates the prohibition against trying an offense on other than a charging document. Like revised MDR 710, § d, new Rule 4–201(b) permits an offense to be tried in the District Court on a statement of charges filed as authorized. The authority is set out in Rule 4–211(b) which says in different words what was said in revised MDR 720, §§ a and b. Rule 4–211(b) reads:

(1) *Before Any Arrest*—A judicial officer may file a statement of charges in the District Court against a defendant who has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant has committed the offense charged. If not executed by a peace officer, the affidavit shall be made and signed before a judicial officer.

(2) *After Arrest*—When a defendant is arrested without a warrant, the officer who has custody of the defendant shall forthwith cause a statement of charges to be filed against the defendant in the District Court. At the same time or as soon thereafter as is practicable, the officer shall file an affidavit containing facts showing probable cause that the defendant committed the offense charged.

When a statement of charges is filed, the requirements for the issuance of a summons or warrant are the same under Rule 4–212 as they were under MDR 720. As before, a copy of the charging document shall be attached to the summons or warrant, Rule 4–212(b) and (d), and as before, the warrant is executed by the arrest of the defendant. Rule 4–212(e). The duties of a commissioner and a District Court judge upon a defendant's initial appearance in court are the same essentially under Rule 4–213(a) as they were under MDR 723, § b.

We summarize the function of a District Court commissioner with respect to a statement of charges as prescribed by the rules. A commissioner is not now, and never has

been, required to issue a statement of charges when a defendant is arrested without a warrant. In such circumstances, it is the obligation of the officer who has custody of the defendant to cause forthwith a statement of charges to be filed. MDR 706, § C3 (1971); MDR 720, § a (1977); Rule 4–211(b)(2) (1984). The 1971 rules did not call for the issuance of a statement of charges when a defendant was arrested under the authority of a warrant or appeared in answer to a summons. In such event he was usually tried on those documents.

It was not until the revision of the rules in 1977 that a commissioner had any function with respect to a statement of charges under the rules. *But see Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). After an arrest, when an officer causes a statement of charges to be filed against the defendant, he shall at the same time or as soon thereafter as is practicable file a verified statement (affidavit) containing facts showing probable cause that the defendant committed the offense charged. MDR 720 a (1977). *See* Rule 4–211(b)(2) (1984). The commissioner looks to the statement of charges and affidavit among other things, in determining the eligibility of the defendant for pretrial release. MDR 723, § b4 (1977); Rule 4–216(c) (1984).

Before an arrest a commissioner may file a statement of charges upon written application under affidavit showing probable cause that the defendant committed the offense charged. MDR 720, § b (1977); Rule 4–211(b)(1) (1984). It is this function of the commissioner that the circuit court held constitutionally proscribed.

(d)

*Justices of the Peace and Committing Magistrates*

As we have seen, the legislature has bestowed upon commissioners of the District Court of Maryland the authority "in general, [to] perform all the functions of committing magistrates as exercised by the justices of the peace prior

to July 5, 1971." Md.Code, § 2–607(c)(2) of the Courts and Judicial Proceedings Article.

Justices of the peace have been provided for, or at least referred to, in every Maryland Constitution from the first (1776) to the present (1867) until the abolition of the office by the 1970 constitutional amendment. *See Smith v. State,* 210 Md. 440, 443–444, 124 A.2d 839 (1956); *Levin v. Hewes,* 118 Md. 624, 638–641, 86 A. 233 (1912); 1 G. Liebmann, *Maryland Practice (District Court Law and Practice)* §§ 3–9 (1976); Adkins, *The District Court: Past, Present, Future,* 3 Md.Bar J. (No. 4) 6, 6–8 (1971). *See also Constitutional Revision Study Documents of the Constitutional Convention Commission of Maryland,* at 228 and 970–973 (1968).[2] "None of the old English traditions apply to the office of justice of the peace in this State."[3] *Woelfel v. State,* 177 Md. 494, 503, 9 A.2d 826 (1939). The present Constitution gave the Governor the authority to appoint justices of the peace, subject to confirmation by the Senate; their eligibility, fitness, and qualifications were left to the Governor. But their duties, jurisdiction, and compensation were matters for the General Assembly. *Quenstedt v. Wilson,* 173 Md. 11, 18–20, 194 A. 354 (1937); *Humphreys v. Walls,* 169 Md. 292, 298–303, 181 A. 735 (1935). Over 150 years ago E.H. Cummins, Esquire, who had for several years acted in the capacity of a justice of the peace in Baltimore City, felt the need for a compilation of the laws relating to the jurisdiction and duties of a justice of the

---

**2.** The constitution proposed by the 1968 Constitutional Convention abolished justices of the peace and created a District Court. The proposed constitution was not ratified.

**3.** Lewis Hochheimer, Esq., said:

Justices of the peace are officers originally appointed for the purpose of preventing breaches of the peace and bringing to trial criminal offenders. They had no power to try offenses, but only to inquire into them with a view to holding the participants for trial. L. Hochheimer, The Law of Crimes and Criminal Procedure § 57 (2d ed. 1904). *See* A. Thomas, Procedure in Justice Cases 1–3, 247–278 (1906); J. Latrobe, The Justices' Practice 17–25, 315–375 (7th ed. 1880).

peace, which were "scattered throughout a mass of legislative provisions." He wrote a book entitled *The Maryland Justice* (1825). In his discussion of "criminal process," he said:

Justices of the peace are required, on the part of the state, to assist in bringing to justice all violators of the law, and for this end are invested with very high powers. They may cause to be arrested, examine, recognize or commit all persons charged with or suspected of any criminal act. *Id.* at 44.

There came to be a proliferation of justices of the peace, and within their ranks the designation of selected justices with special powers. They were given various appellations descriptive of their functions, for example, justices at large, trial magistrates, police justices, magistrates for juvenile causes, and committing magistrates.[4] Committing magistrates were created by Acts 1945, ch. 777. It directed the Governor, by and with the advice and consent of the Senate, to "appoint for each county in the State one or more Justices of the Peace to be known as 'Committing Magistrates.' and such number of justices of the peace at large in the several counties, to be designated 'Trial Magistrates'...."[5] A committing magistrate had "authority, exclusive of that of ordinary justices of the peace, *to issue warrants in criminal cases* and to set bail or collateral and

---

4. "As of 1966 there were a total of 477 constitutional justices of the peace outside Baltimore City in addition to 21 judges and substitute judges of [constitutionally created courts]. Of the 477 justices, only 75 were trial magistrates, there being also 23 substitute trial magistrates, 268 committing magistrates, and 111 justices of the peace without added powers." 1 G. Liebmann, Maryland Practice (District Court Law and Practice) § 5, at 30–31 (1976). The Maryland courts of limited jurisdiction ranged from part-time lay magistrates to full time, well-qualified People's Court and Municipal Court judges.

5. Following the passage of Acts 1945, ch. 777 "the only duties remaining in ordinary justices were the duty of forwarding cases instituted before them to another court for trial, their duties as conservators of the peace, and their civil authority, similar to that of a notary public, to take acknowledgments on instruments." Liebmann, *supra* at § 5 at 30.

commit to jail in default of the posting thereof in cases involving minor offenses." *Liebmann,* supra, at § 5 at 29–30 (emphasis added). This Court said in *Quenstedt v. Wilson,* 173 Md. at 16–17, 194 A. 354 that trial justices of the peace may issue warrants for offenses within their jurisdiction and in cases of felonies. In response to the request of a committing magistrate to explain the duties of that office, the Attorney General of Maryland replied that the duties of a justice of the peace, known as a committing magistrate, consisted of

> accepting civil and criminal cases initiated before you and immediately forwarding them to another court for trial, the issuance of warrants in criminal cases, the setting and accepting of bail or collateral and committing to jail in default of the posting thereof in cases involving minor offenses, the taking of acknowledgments on instruments, and the making of arrests for violations of the law committed in your presence. 42 Op.Atty.Gen. 264, 266–267 (1957).

The Report of the Committee on Judicial Administration of the Maryland State Bar Association of 20 June 1966, recommended that a State-wide system of courts of limited jurisdiction to be known as district courts be established in Maryland. The Committee found that arrest warrants were issued by committing magistrates, as well as by trial magistrates, judges of the people's courts, judges of the Municipal Court of Baltimore City and judges of courts of general jurisdiction. *Id.* at 20–21, 194 A. 354. The Committee urged that judges of the proposed district court "be authorized to appoint commissioners whose duties generally would be to issue arrest warrants and to accept bail or collateral." *Id.* at 21, 194 A. 354.[6] The Committee on

---

6. The Report of the Committee on Judicial Administration of the Maryland State Bar Association of 20 June 1966 at 21, explained:
    If arrest warrants are to be issued by judges only, it is, of course, extremely important that the judges be at all times reasonably accessible to the police. This may not always be feasible, particularly in rural areas of the State.

Judicial Administration on Establishment of a District Court for Maryland, in its report of 4 June 1963, submitted a proposed constitutional amendment to enable the creation of a District Court and proposed legislation to implement the amendment. The Committee commented that the creation of a commissioner system is "a most important part of the District Court structure. These officials will be the committing magistrates. They will have authority to issue warrants of arrest, to commit to jail in default of bail, set bond and to exercise all of the functions of the current justices of the peace who are committing magistrates." *Id.* at 13, 194 A. 354. The commissioner provisions of the proposed constitutional amendment and of the proposed legislation were in substance and, in large part in verbiage, the same as the amendment later ratified and the legislation subsequently enacted. *Id.* at Appendices A–5 and B–11. The constitution submitted in 1968 by the Constitutional Convention was in tune with the Maryland State Bar Association's proposals, giving commissioners the duties of committing magistrates including powers with respect to warrants of arrest. *See* Constitutional Convention Committee Memorandum No. JB–1, § 5.11 at 12–13 (prepared by the Committee on the Judicial Branch, 6 November 1967).

Beyond question, justices of the peace in Maryland had the power to issue warrants of arrest. This power sifted down to those justices of the peace designated as committing magistrates, and the power was perpetuated in commissioners of the District Court by the constitutional amendment, by the enabling legislation and by the implementing rules of this Court.

### (e)

### The Circuit Court Decision

### (i)

### The Constitution and the Statute

Despite the power of a commissioner of the District Court of Maryland to issue a warrant of arrest, which we find is bestowed by constitution, statute and rule, the judge below

decided that a commissioner has no power to issue a statement of charges. He looked at the declaration in Art. IV, § 41G of the Constitution of Maryland that "[c]ommissioners may exercise power only with respect to warrants of arrest ..." and saw the term "warrants of arrest" only in its literal sense. We think that it is perfectly clear that the term "warrants of arrest" encompasses "statements of charges." Even if this were not readily apparent, as we find it to be, it would become so when the phrase "only with respect to warrants of arrest" is considered along with the phrase that immediately follows, namely "or [with respect to] bail or collateral or other terms of pre-trial release pending hearing, or incarceration pending hearing...." When all of the powers designated are considered, it is readily evident that they comprise the primary powers which were enjoyed by a committing magistrate. The judge below observed that "[t]he drafters of the Constitution did not see fit to include language in the Constitution granting commissioners the powers of the justice of the peace." It is of no consequence whatsoever that the drafters did not expressly employ the term "justices of the peace" or the term "committing magistrates." They enumerated with specificity the important powers of a committing magistrate as a specialized justice of the peace, even though they did not refer directly to that office by name. It follows that when the statute speaks of "all the functions of committing magistrates as exercised by the justices of the peace prior to July 5, 1971," the Constitution is not violated. The powers specified in the Constitution are the powers which were exercised by committing magistrates. There is no repugnancy between the Constitution and the statutes in this regard.

### (ii)

### The Constitution and the Rules

This conclusion does not answer the question whether the Maryland Rules depart from the Constitution. The Constitution speaks only in terms of "warrants of arrest;" the Rules address "statements of charges." It is not surprising

that the constitutional amendment and the implementing legislation did not use the nomenclature "statement of charges," and that the term did not appear in the proposed amendment to the constitution and in the proposed District Court Act recommended by the Maryland State Bar Association Committee on Judicial Administration on Establishment of a District Court of Maryland. *See* Appendix B of the Committee's 1968 Report. The amendment as ratified and the legislation as enacted closely followed the proposals. The phrase "statement of charges" was not used in the era of justices of the peace. A statement of charges as a "charging document" is a creature of the rules of the Court of Appeals. It is our rule that requires a judicial officer to issue and file a statement of charges. The phrase cropped up in the Maryland District Rules which implemented the legislation creating the District Court. As noted, *supra*, a statement of charges, along with an arrest warrant, summons, citation and criminal information, were defined as charging documents. MDR 702, § a (1971). The necessity for an additional identifying name in the category of arrest warrant and summons is readily apparent. Both an arrest warrant and a summons were a means of bringing a defendant to trial, the former by enabling his arrest and the latter by commanding his appearance before the court. When, however, a defendant had been arrested without a warrant, neither an arrest warrant nor a summons was necessary or appropriate. But, in such case, there was no charging document extant on which the defendant could be tried. Therefore, to bring the defendant to trial without the necessity of a State's Attorney filing an information or a Grand Jury returning an indictment, a statement of charges was devised. It was not intended that it be a completely new creature, entirely separate and distinct from arrest warrants and summonses. This is evident from the fact that each of a statement of charges, a summons and an arrest warrant were required to contain the defendant's name or description, a statement of the facts constituting the offenses charged, the formal charges placed against the

defendant, the identity of the person upon whose applica-
tion the charging document was issued, the date, time and
place of execution or service when made, and the name of
the officers executing the warrant, serving the summons or
preparing the statement of charges. Each of them had to
contain a statement informing the defendant of his rights.
MDR 706, § e (1971). An arrest warrant, a summons and a
statement of charges were each a warrant with a common
purpose, namely to bring a defendant to trial. The only
difference in them was that an arrest warrant included a
command to arrest and a summons contained a command to
appear. They bore distinguishing names only for ease of
identification. They were simply classifications within the
same category. Collectively, they formed the genus "war-
rant." [7]

The Maryland District Rules as revised in 1977 changed
the procedures regarding arrest warrants, summonses and
statements of charges, but the procedural changes did not
change the inherent nature of those documents. The Rules
Committee solved its "great conceptual difficulty with sum-
monses and warrants in the District Court" which arose
from the fact that those documents were, at times, used as
charging documents, by separating charging documents
from warrants and summonses but requiring a copy of the
charging document to be attached to the warrant or sum-
mons. This court accepted that solution. *See* MDR 702,
§§ a, i and m; 710, §§ a and d; 720, §§ c and e (1977).

We observed, *supra*, that when we consolidated the
Maryland Rules of Procedure and the Maryland District
Rules in 1984, the new Rules effected no changes herein
relevant from the 1977 revisions. Today, as under the 1977
rules, a defendant may be tried on a statement of charges,
but not on a summons or arrest warrant. Rule 4–201(a). A
statement of charges, however, is a prerequisite to the

---

7. Apparently "arrest" is usually appended to "warrant" to distinguish a
   warrant of arrest from a search warrant, which has an entirely
   different purpose and alone has never served as a charging document.

issuance of both an arrest warrant and a summons, and the issuance of a statement of charges is contingent upon a written application therefor, under affidavit, showing probable cause. Rule 4–211(b)(1). And a copy of the statement of charges must be attached to the arrest warrant or the summons. Rule 4–212(b) and (d). A statement of charges, an arrest warrant, and a summons may be filed by a judge or a District Court Commissioner. Rules 4–211(b)(1), 4–212(b) and (d). The effect of these procedures is actually no different than that followed in years long past with regard to warrants of arrest and summonses issued by Justices of the Peace. The content of a warrant and a summons on which a defendant could then be tried was the same as the content of the statement of charges and the warrant or summons used today. The only real distinction between the former procedure and the present procedure is that today what was formerly included in one document—the warrant or the summons—now appears in two documents—the statement of charges and the warrant or summons. To all intent and purpose, a "statement of charges," on which a defendant may now be tried, is new in name only. *See* J. Latrobe, *The Justices' Practice* 315–362 (7th ed.1880). *See also* A. Thomas, *Procedure in Justice Cases* 266–270 (1906).

(iii)

*Conclusion*

We conclude from our scanning of the constitutional amendment, the statutory provisions, the rules of this Court, and the powers of committing magistrates, all in the frame of reference of their historical backgrounds, that "warrants of arrest" as used in Art. IV, § 41G of the Constitution of Maryland is a generic term which encloses within its embrace a "statement of charges" within the meaning of the Maryland Rules. Therefore, the Constitution of Maryland does empower a commissioner of the District Court of Maryland to issue a statement of charges. We conclude that the judge below erred when he decided that a commissioner did not have that power.

(2)

*Separation of Powers*

The circuit court determined, and Smith argues, that the doctrine of the separation of powers expressed by the Maryland Declaration of Rights forbids the issuance of statements of charges by commissioners of the District Court of Maryland. "We, the People of the State of Maryland" declared in Article 8 of the Declaration of Rights

> · That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

It was the circuit court's notion that by issuing statements of charges, commissioners, as members of the Judicial Department, were assuming and discharging the duties of State's Attorneys, who are members of the Executive Department. This ursurpation of executive power by a judicial officer was, the court below believed, citing *Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (1956), contrary to the doctrine of separation of powers.

Article 8 of the Declaration of Rights expresses the principle that "the Legislature makes the laws, the Judiciary expounds them, and the Governor sees that they are faithfully executed...." *Baltimore v. State*, 15 Md. 376, 456 (1860). "[B]ut even in this duty, [the Executive] is restrained in some degree, because they must be enforced according to the Constitution and laws and not at his will and discretion." *Id.* The trial judge proceeded on the view that the term "warrants of arrest" in § 41G of Art. IV of the Maryland Constitution did not embrace "statements of charges." As we have set out *supra*, we have reached an opposite conclusion. We assume, for the purpose of decision only, that the initiation of criminal charges is ordinarily a function of the Executive Department and that the issuance of a statement of charges is ordinarily the initiation of a criminal charge. *But see State v. Gee*, 298 Md. 565,

471 A.2d 712, *cert. denied,* —— U.S. ——, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). On our conclusion and these assumptions, the Constitution permits the issuance of statements of charges to be a function of the judiciary, but the Declaration of Rights precludes such exercise of the function as violating the doctrine of separation of powers.

The Declaration of Rights expounds the general principle that the legislative, judicial and executive departments of our government should be kept separate and distinct. The Constitution, however, in Art. IV, § 41G, bestows a specific power upon the judicial department. Even if that specific power encroached on the executive functions, it would prevail over the general principle or a general power relating thereto. This would be so whether the general principle was in the Declaration of Rights and the specific power was in the Constitution or whether both were in the Constitution. It is a basic rule of construction that ordinarily the specific prevails over the general. *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 717–718, 475 A.2d 454 (1984); *Andrews v. Governor of Maryland,* 294 Md. 285, 290, 449 A.2d 1144 (1982); *Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 415, 329 A.2d 702 (1974).

The view that the specific powers granted in § 41G of the Constitution prevails is fortified by the fact that here the general principle is in the Declaration of Rights. In considering the separation of powers article

> we are to bear in mind that the Declaration of Rights is not to be construed by itself, according to its literal meaning; it and the Constitution compose our form of government, and they must be interpreted as one instrument. *Baltimore v. State,* 15 Md. at 459.

The Declaration of Rights announces principles on which the form of government, established by the Constitution, is based. *Id.* Art. 8 "is not to be interpreted as enjoining a complete separation between these several departments." *Id.* at 457. If the Declaration of Rights and the Constitution differ, "the Constitution must be taken as a limitation

or qualification of the general principle previously declared...." *Id.* at 459. We affirmed this view a hundred years later when we held that "notwithstanding the provisions of Article 8 of the Declaration of Rights, ... the specific provisions of Article IV, section 25 [of the Constitution (appointment of judicial clerks)] prevail over the general provisions of Article 8 of the Declaration of Rights." *Boyer v. Thurston,* 247 Md. 279, 295, 231 A.2d 50 (1967) (citing *Anderson v. Baker,* 23 Md. 531, 628 (1865)). In short, the Constitution "indicates that [a function of a Department] belongs where the people choose to place it." *Baltimore v. State,* 15 Md. at 457. The people chose to place the issuance of statements of charges in commissioners of the District Court. So be it.

We conclude that the issuance of statements of charges by commissioners of the District Court, as permitted by the Maryland Rules, is not prohibited by the principle of separation of powers expressed in Article 8 of the Maryland Declaration of Rights.

### (3)

### *Due Process of Law*

The circuit court determined, and Smith argues, that the issuance of statements of charges by commissioners of the District Court of Maryland offends the due process clause of the Constitution of the United States.[8] The basis of this position is that the Fourth and Fourteenth Amendments to

---

8. Amendment XIV, § 1 of the Constitution of the United States forbids *inter alia* "any State [to] deprive any person of life, liberty, or property, without due process of law...." In Article 24 of the Maryland Declaration of Rights the People declared "[t]hat no man ought to be ... deprived of his life, liberty or property, but ... by the Law of the land."

Janet Smith does not suggest that there is a distinction to be drawn in this case between the Fourteenth Amendment to the Constitution of the United States and Article 24 of the Declaration of Rights of Maryland. Nor does it appear that the trial court noted any distinction. *But see Attorney Gen. v. Waldron,* 289 Md. 683, 704, 426 A.2d 929 (1981). *Compare, Horace Mann League v. Board,* 242 Md. 645, 684–685, 220 A.2d 51, *cert. denied,* 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966); *Wright v. Wright's Lessee,* 2 Md. 429, 452–453 (1852).

the United States Constitution require that warrants be issued by a neutral and detached magistrate.[9] The court below cited *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783, (1972), and *Coolidge v. New Hampshire*, 403 U.S. 443, 471, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 *reh. denied*, 404 U.S. 874, 30 L.Ed.2d 120 (1971), and Smith adds *Lo-ji Sales Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) as affirming that principle. The trial judge here said:

A District Court Commissioner cannot be neutral and detached on cases wherein he gathers and gleans the evidence, selects a criminal charge, and reviews it for probable cause. The parameters [sic] of due process are breached when a person acts in the dual capacity of judicial officer and prosecutor, at least with respect to the offense to which the warrant and charging document relate.

Smith concludes:

Thus, even if [the State] is correct that determining whether probable cause exists to issue a statement of charges is essentially identical to determining whether probable cause exists to issue a warrant of arrest, the

---

**9.** Amendment IV to the Constitution of the United States guarantees that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It flows to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In Article 26 of the Maryland Declaration of Rights the People declared

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are greivous [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Article 26 and the Fourth Amendment are in *pari-materia*. *Gahan v. State*, 290 Md. 310, 319–320, 430 A.2d 49 (1981).

Constitution requires that the determination be made by two separate bodies. If District Court Commissioners are to fulfill their constitutionally vested duty to issue arrest warrants, they cannot issue charging documents as well. This conclusion requires a harder look.

At the onset we note two significant facts. The first is that a commissioner of the District Court of Maryland has no power to try a criminal cause. An important inducement for the establishment of a committing magistrate-trial magistrate system was that it denied to the committing magistrate and gave to the trial magistrate the power to try cases. No longer did justices, of the peace generally have a trial function. The power to try criminal causes was not bestowed on committing magistrates by constitution, statute, or rule, and, therefore, commissioners did not inherit that function from committing magistrates. A commissioner is aloof from the trial of the case. The second fact is that a commissioner issues a statement of charges only *before* the defendant is in custody. Once a defendant has been arrested, with or without a warrant, or commanded to appear by a summons, the function of a commissioner is to determine whether the defendant's liberty should be restrained pending trial. *See* Rule 4–216 (Pretrial Release).

A commissioner has no control over the prosecution of an offense. The State's Attorney may terminate prosecution and dismiss the charge by entering a nolle prosequi, Rule 4–247, or may request the court to mark the charge "stet" on the docket and thereby indefinitely postpone the trial, Rule 4–248. The State's Attorney may supplant the statement of charges by filing an information. Rules 4–201(e) and 4–211(c). He may also seek the return of an indictment by the grand jury when the offense alleged is not within the jurisdiction of the District Court. Rules 4–102(d) and 4–211(d). Both an information and an indictment may charge the defendant with offenses different from those in the statement of charges.

As we have seen *supra*, the function of a commissioner in determining the existence of probable cause is only in connection with the issuance of a statement of charges and a warrant of arrest. Rule 4–211(b)(1) permits a commissioner to

> file a statement of charges in the District Court against a defendant who has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant committed the offense charged.

Maryland Rule 4–212(d)(1) provides that a commissioner, as a judicial officer,

> may, and upon request of the State's Attorney shall, issue a warrant for the arrest of the defendant, other than a corporation, upon a finding that there is probable cause to believe that the defendant committed the offense charged in the charging document and [certain other considerations].

It is perfectly apparent that the probable cause sufficient to support the statement of charges is essentially identical with the probable cause sufficient to support a warrant of arrest. The position taken by the trial judge would call not only for a commissioner to be available twenty-four hours a day, seven days a week, to issue an arrest warrant, but also for a representative of the State's Attorney to be so available to issue a statement of charges. Apparently they would sit side by side, each making a determination of probable cause [10] on the same application and affidavit. We

---

**10.** The nature of probable cause was fully explained in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). It teaches that "[b]oth the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents." 420 U.S. at 111, 95 S.Ct. at 861. "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). "[T]he Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible," instead of "the

do not believe that due process requires, in the circumstances, such a useless waste of manpower and money. The full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses—"are not essential for the probable cause determination required by the Fourth Amendment." *Gerstein v. Pugh, supra,* 420 U.S. at 120, 95 S.Ct. at 866. The standard for an arrest, namely, probable cause to believe that a suspect has committed a crime, "traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." *Id.* [11] Underlying all of this is that "the probable cause determination is not a constitutional prerequisite to the charging decision...." *Id.* at 125 n. 26, 95 S.Ct. at 869 n. 26.

In disposing of the separation of powers contention, we assumed, but only for the purpose of decision, that the issuance of a statement of charges is an executive function. We now squarely face the nature of that function. We declare that under the circumstances in which a commissioner issues a statement of charges, he is sufficiently independent of police and prosecution to meet the constitutional requirement of being neutral and detached. Although the substance of the Constitution's warrant requirements does not turn on the label of the issuing party,

---

officer engaged in the often competitive enterprise of ferreting out crime." *Id.,* 420 U.S. at 112–113, 95 S.Ct. at 862, quoting in part from *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Thus it is *the prosecutorial judgment standing alone* which does not meet the requirements of the Fourth Amendment. *Gerstein,* 420 U.S. at 117, 95 S.Ct. at 864.

11.  The Court found that an informal procedure is justified not only by the lesser consequence of a probable cause determination but also by the nature of the determination itself. It does not require the jurisdiction of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. *Gerstein v. Pugh,* 420 U.S. at 121, 95 S.Ct. at 866.

*Shadwick v. City of Tampa,* 407 U.S. at 350, 92 S.Ct. at 2122, it is beyond question that commissioners of the District Court of Maryland are judicial officers in name and in fact. The Maryland Rules so designate them. Rule 4–102(f). They are appointed by the judiciary. "Commissioners in a district shall be appointed by and serve at the pleasure of the Administrative Judge of the district, subject to the approval of the Chief Judge of the District Court." Constitution of Maryland, Art. IV, § 41G. *See* Md. Code (1984, 1985 Cum.Supp.) § 2–607(a) of the Courts and Judicial Proceedings Article. They have no affiliation with prosecutors or police. They work not for the police or prosecutor but for a judge and under a judge's supervision and control. Their duties are those which may also be exercised by District Court judges. They are, in the true sense of the term, "judicial officers," and they perform judicial functions.

In light of all this, the trial judge found that commissioners lose their status as neutral and detached judicial officers when they issue statements of charges. The judge thought that when a commissioner signed a statement of charges he became affiliated with the prosecution; the judge observed that "the commissioner cannot sign the statement of charges because he would in fact be usurping the powers of an executive office." The judge opined that a commissioner "cannot be neutral and detached in cases wherein he gathers and gleans the evidence, selects a criminal charge, and reviews it for probable cause." Smith follows this lead. She urges that the commissioner cannot constitutionally issue a charging document and an arrest warrant because the finding of probable cause as to one impairs the neutrality and detachment necessary to a finding of probable cause as to the other. We think that the trial judge and Smith paint with too broad a brush.

By reason of the issuance of a statement of charges and a warrant of arrest, a commissioner is not "engaged in the

often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Nor is he gathering and gleaning the evidence, as the trial judge put it. As we have seen, the duty of a commissioner is to be available both to the people of this State who believe that they have been the victim of a crime and to enforcement officers who believe that a criminal offense has been committed. It is the citizen or the peace officer, not the commissioner, who, before any arrest, initiates the procedure by filing a written application for a statement of charges, identifying the alleged criminal and, under affidavit, setting out facts to show the existence of probable cause that the suspect committed the offense. Only when the commissioner determines that the affidavit shows probable cause, does he issue a statement of charges and an arrest warrant or summons, as may be appropriate, to bring the person charged within the custody of the court. Far from acting as a prosecutor or a police officer in the exercise of this function, the commissioner, in large measure, is protecting the rights and interests of the accused by assuring that he will not be unconstitutionally charged and arrested. We simply cannot conceive how the exercise of this function, under the procedures spelled out by our rules, impeaches the neutrality and detachment constitutionally required of the commissioner. It may be that the issuing of the statement of charges is, at times, the initiation of prosecution for some purposes, *see State v. Gee, supra,* for example, but such function does not align the commissioner with the prosecutor or the police and does not impugn his role as a judicial officer. He does not, thereby, exercise such prosecutorial functions as to suffer from unaccepted bias built into his job by the laws of this State. We see no reason to believe that a commissioner, merely because he issues a statement of charges upon a written application of a complainant, who furnishes facts under an affidavit to show probable cause that the person the complaint accuses has committed the crime, will be unable to heed the advice

Justice of the Peace E.H. Cummins gave his fellow justices over 150 years ago. He cautioned the Justices of the Peace that they

> should never forget that the law supposes every citizen innocent until convicted of crime; and on that account should never allow their feelings to affect their conduct towards one accused; their duty being fully acquitted when they secure for trial all those who shall come before them to answer, or submit to be dealt with according to law.

*The Maryland Justice, supra,* at 44–45.

*Coolidge v. New Hampshire, supra,* and *Lo-Ji Sales, Inc. v. New York, supra,* provide examples of the lack of neutrality and detachment which is constitutionally offensive. In *Coolidge* "the determination of probable cause was made by the chief 'government enforcement agent' of the State—the Attorney General—who was actively in charge of the investigation and later was to be chief prosecutor at the trial." 403 U.S. at 450, 91 S.Ct. at 2029. In *Lo-Ji* the determination of probable cause upon an application for a search warrant was made by the Town Justice, but he "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." 442 U.S. at 327, 99 S.Ct. at 2324. In the store where the search was made, "he conducted a generalized search under authority of an invalid warrant; [12] he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all 'similar' items as well, leaving determination of what was 'similar' to the officer's discretion. Indeed, he yielded to

---

12. The warrant was a general one, not purporting to particularly describe the things to be seized. It left entirely to the discretion of officials conducting the search to decide what to seize. Furthermore, it was open-ended, to be completed while the search was being conducted and the items seized. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1979).

the State Police even the completion of the general provision of the warrant." *Id.* The functions of a commissioner are a far cry from the activities of the Attorney General in *Coolidge* and the Town Justice in *Lo-Ji.*

Commissioners of the District Court of Maryland are in many ways akin to the municipal clerks in *Shadwick v. City of Tampa, supra,* cited by the trial judge and Smith. The municipal clerks were members of the civil service, appointed by the city clerk, an "executive official," and enjoyed no statutorily specified tenure in office. 407 U.S. at 347–348, 92 S.Ct. at 2121. They were assigned to work in the municipal court. They could not sit as a judge or issue search warrants or even a felony or misdemeanor arrest warrant. But they could issue a warrant for the arrest of those charged with having breached municipal ordinances. *Id.* at 347, 92 S.Ct. at 2121. It was the exercise of that function that was challenged as constitutionally invalid. The Court found that the requisite detachment was present.

> There has been no showing whatever here of partiality, or affiliation of these clerks with prosecutors or police. The record shows no connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires. Appellant himself expressly refused to allege anything to that effect. The municipal court clerk is assigned not to the police or prosecutor but to the municipal court judge for whom he does much of his work. In this sense, he may well be termed a 'judicial officer.' While a statutorily specified term of office and appointment by someone other than 'an executive authority' might be desirable, the absence of such features is hardly disqualifying. Judges themselves take office under differing circumstances. Some are appointed, but many are elected by legislative bodies or by the people. Many enjoy but limited terms and are subject to re-appointment or re-election. Most depend for their salary level upon the legisla-

tive branch. We will not elevate requirements for the independence of a municipal clerk to a level higher than that prevailing with respect to many judges. The clerk's neutrality has not been impeached: he is removed from prosecutor or police and works within the judicial branch subject to the supervision of the municipal court judge. 407 U.S. at 350–351, 92 S.Ct. at 2123.

The Court held that the clerks "may constitutionally issue the warrants in question." *Id.* at 352, 92 S.Ct. at 2123. Commissioners meet all the tests, and then some, under which the clerks in *Shadwick* were deemed to be neutral and detached. The mere authority to issue statements of charges does not, in light of the manner in which and the circumstances under which, the authority is to be exercised, change their status from neutral and detached to one of inacceptable bias. *See United States v. Haywood,* 464 F.2d 756, 760–761 (D.C.Cir.1972) (Maryland Justices of the Peace deemed neutral as they possess no prosecutorial functions).

We conclude that the issuance of statements of charges by commissioners of the District Court of Maryland, as permitted by the Maryland Rules, is not proscribed as denying due process of law.

## IV

We have determined that the power granted commissioners of the District Court of Maryland is constitutionally authorized and lawfully vested. We therefore hold that the Circuit Court of Baltimore City erred in dismissing the statement of charges. The criminal cause against Janet Smith may be tried on that statement.

MOTION TO DISMISS APPEAL DENIED; MOTION TO DISMISS WRIT OF CERTIORARI DENIED; JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY JANET SMITH.