544 A.2d 346

**Richard Allen HUBBARD**

v.

**STATE of Maryland.**

**No. 1721, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 18, 1988.

Certiorari Denied Oct. 11, 1988.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Barry A. Hamilton, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Deborah Armstrong, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before GILBERT, C.J., and BLOOM and POLLITT, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Montgomery County convicted Richard Allen Hubbard of daytime housebreaking under Md.Code Ann. (1957, 1987 Repl.Vol.) art. 27, § 30b. On the basis of two prior convictions of crimes of violence, Hubbard was sentenced to a term of twenty-five years imprisonment without parole, pursuant to Md.Code Ann. (1957, 1987 Repl.Vol.) art. 27, § 643B. In this appeal from that judgment, Hubbard contends that he received an unfair trial and an illegal sentence. We disagree with his contentions and, for the reasons which follow, will affirm the verdict and the sentence.

## Facts

On the morning of 5 September 1986 Hubbard broke into and entered the residence of Tina Dove, Larry Schwartzback, and Nancy Davido in Columbia, Maryland, entering the home through a dining room window after all three residents had left for work. Unfortunately for Hubbard, Tina Dove returned unexpectedly to the house that morning because her employer had no work for her. Ms. Dove observed a man leaving the house with stereo speakers. Her first thought was that Nancy Davido's stereo was being repossessed. The man loaded the stereo speakers into a brown, four door car and drove away.

When Ms. Dove entered the house, she found that a dining room window was cracked and its screen removed, that the house had been ransacked, and that all of Ms. Davido's stereo equipment had been taken. She immediately telephoned Ms. Davido and Mr. Schwartzback; several hours later she telephoned the police.

The verbal description Ms. Dove gave the police of the man she had seen leaving the house with the stereo speakers did not exactly match appellant's description, but she did pick Hubbard's picture from a photographic array, and in court she identified Hubbard as the man who took the speakers. The police found Hubbard's fingerprints on the dining room window screen.

Tina Dove had never seen appellant before the day of the break-in, but Ms. Davido and Mr. Schwartzback knew him. Hubbard had formerly worked with Mr. Schwartzback; Ms. Davido had met Hubbard on one or two occasions when Hubbard came to visit Schwartzback.

Hubbard was charged with breaking and entering and with theft of goods valued over $300. At trial, he challenged Ms. Dove's photographic and in-court identifications, pointing out discrepancies between his appearance on the day of the break-in and the oral description initially given by Ms. Dove to the police of the man she saw with the stereo speakers. Appellant's counsel vigorously argued (1) that Ms. Davido and Mr. Schwartzback had influenced Tina Dove to accuse Hubbard of the crime, and (2) that the fingerprints found on the outside and inside of the dining room window screen were left by Hubbard during one of his prior visits to the home.

The jury convicted Hubbard of breaking and entering but was unable to reach a verdict on the theft charge, and the State then nolle prossed the theft charge. The court imposed the sentence of twenty-five years imprisonment without parole, pursuant to Md.Code Ann. (1957, 1987 Repl.Vol.) art. 27, § 643B, on the basis of evidence that Hubbard

previously had been convicted in Maryland of burglary and in California of attempted robbery.

## *Appellant's Contentions*

Appellant contends that the trial judge committed prejudicial error during the course of the trial when he refused to permit adequate cross-examination of one of the State's witnesses. In addition, appellant claims the trial judge erred when he instructed the jury "... that fingerprint evidence, if believed, places the defendant at the scene of the crime on the day in question," and also when he told the jury that Tina Dove "made an identification of appellant at the time of the crime."

Attacking the legality of the mandatory sentence under Md.Ann.Code art. 27, § 643B, appellant asserts first that the California "conviction" of attempted armed robbery did not amount to a conviction under Maryland law and, second, that attempted armed robbery, under California law, is not a violent crime within the meaning of § 643B.

### I

## *The Cross-examination*

During the course of trial, the State called as a witness Officer Joyce, the police officer who responded to Ms. Dove's call on the day of the break-in. Appellant contends that the court thwarted his counsel's attempt to elicit testimony, during cross-examination of the officer, which would have indicated that Tina Dove's identification of Hubbard was influenced by Nancy Davido. Both Ms. Dove and Ms. Davido had previously denied any discussion between them concerning the identification of the culprit prior to Dove's identification of Hubbard's photograph. In addition, Ms. Davido had denied speaking to Officer Joyce concerning the culprit's identity. Hubbard's counsel for this appeal, based on his interpretation of the record, asserts that the trial court impermissibly limited this line of questioning. We believe that counsel misinterprets the record.

During defense counsel's cross-examination of Officer Joyce, the following exchange took place:

Q. Did you hear Tina Dove give a description to Nancy Davido?

A. Oh, yes.

Q. All right, and it was on the basis of Nancy Davido's say so that you—

[STATE'S ATTORNEY]: Objection to what Nancy Davido might have said.

[THE COURT]: I think that is probably right.

[APPELLANT'S ATTORNEY]: Well, let me ask this.

[BY APPELLANT'S ATTORNEY]:

Q. Did you write in your report, "Hubbard was developed as a suspect from the victim, Davido"?

[STATE'S ATTORNEY]: Objection, Your Honor. Objection.

At a lengthy bench conference which followed that exchange, the prosecuting attorney indicated that she objected to appellant's question because she believed Nancy Davido had told Officer Joyce that appellant had committed other break-ins, so appellant's question therefore might "[open] up doors for all that to come in." She then insisted that "if [appellant] really wants to go into what Nancy Davido said, I just want to let him know that I am going to come back and ask all the other questions." The judge, indicating that he agreed with the State's position, suggested that appellant's question concerning what Nancy Davido told the police might elicit other crimes evidence. Defense counsel replied that he did not want to reveal what Nancy Davido told the police, and the following exchange took place:

[APPELLANT'S COUNSEL]: But just so we are clear, I would like to get unobjected answers to the question, "Do [sic] you write in your report that the subject was developed as a suspect by the victim?"

[THE COURT]: All right, and he can say yes or no and if he says, "Yes"—

[APPELLANT'S COUNSEL]: That is the end of it.

[THE COURT]: That is the end of it.

Before ending the bench conference the trial judge once more indicated that if appellant's counsel brought out what Nancy Davido told Officer Joyce, the State would be allowed to ask "what else did Nancy Davido say."

After the bench conference concluded, appellant's trial counsel abandoned his question about what the officer wrote in his report about the subject being developed as a suspect by the victim and pursued a new line of questioning.

We reject appellant's contention that the trial judge erred in sustaining the State's objection to the above-quoted question because it is very clear from the record that the trial judge *overruled* the State's objection. It is obvious that appellant's trial counsel either chose not to ask the question in order to avoid a possibly incriminating response or simply misunderstood the court's ruling. In any event, the trial judge did not commit the error asserted by appellant.

## II

### The Jury Instructions

A. *The fingerprint evidence*

■ At the close of all evidence, the trial judge, prefacing his jury instructions with "a very brief summary of what brings us here today," specifically told the jury, "What I say about the evidence doesn't make any difference anyway." During the course of his summation, the judge stated:

[F]ingerprint evidence was received which if believed places the defendant at the scene on the day in question.

Appellant claims, and the State concedes, that the above-quoted statement was wrong.[1] The State claims, and appel-

---

1. As a matter of law, "fingerprint evidence found at the scene of the crime must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime." *McNeil v. State,* 227 Md. 298, 300,

lant concedes, that the trial judge later gave a correct instruction as follows:

> In order to prove that the defendant committed the offenses with which he is tried you are instructed that the fingerprint evidence found at the scene of the crime must be coupled with evidence of other circumstances tending reasonably to show that the fingerprints were left there at the time of the crime.

The State and appellant disagree on whether the trial judge's initial erroneous summary of the evidence amounted to prejudicial error. Appellant claims that the correct and incorrect instructions rendered "the instructions taken as a whole ambiguous and confusing." The State claims that the error was harmless because it was merely part of a brief summary of the evidence and because the trial judge thereafter not only gave a correct instruction as to the law but also told the jury that his comment concerning the evidence "doesn't make any difference anyway." We agree with the State that the subsequent remarks corrected the error and rendered it harmless.

It is clearly the law that "when objection is raised to a court's instruction, attention should not be focused on a particular portion lifted out of context, but rather its adequacy is determined by viewing it as a whole." *State v. Foster*, 263 Md. 388, 397, 283 A.2d 411 (1971), *cert. denied*, 406 U.S. 908, 92 S.Ct. 1616, 31 L.Ed.2d 818 (1972) (citations omitted). Viewing the instructions in the case *sub judice* as a whole, we cannot conclude that the court's unguarded comment about the fingerprint evidence constituted prejudicial error.

Read in the context of the trial judge's brief comments concerning the evidence, the remark concerning the fingerprint evidence loses much of its sting. The trial judge said:

---

176 A.2d 338 (1961) (citations omitted). Hence, the fingerprint evidence, standing alone, could not indicate that appellant was at the scene of the crime on the day of the crime.

Ms. Dove identified the person as the defendant both as an eyewitness at the time and by photographic ID later during the day. In addition, fingerprint evidence was received which if believed places the defendant at the scene on the day in question.

In context, the trial judge's remark that the evidence "if believed places the defendant at the scene on the day in question" might be taken as referring to the combined effect of Ms. Dove's identification and the fingerprint evidence. So interpreted, his statement would be a logical, accurate summary; the fingerprint supports the identification of appellant as the person who was there that day. *See, McNeil v. State,* 227 Md. at 300, 176 A.2d 338. But even if we were to interpret the comment as referring only to the fingerprint evidence (and therefore as a clearly erroneous factual statement) we are persuaded that the error was harmless beyond a reasonable doubt, because the trial judge correctly instructed the jury on the law and specifically told the jury:

[Y]ou are to draw no conclusion whatever from any comments that I have made during the course of this trial either in relation to my views in this case or as to my views as to any particular witness or any particular piece of evidence.

This is not a situation where the jury instructions were misleading. *See, Pitts v. State,* 36 Md.App. 594, 374 A.2d 632 (1977) (reversible error for trial judge to instruct jury that there is no presumption of innocence in favor of a criminal defendant, and to instruct the jury that the State must provide guilt beyond a reasonable doubt). Neither is this a case where the trial judge gave utterly conflicting instructions on the law. *See Haney v. Marshall,* 9 Md. 194 (1856). At most, the judge, in gratuitously summarizing the evidence, misstated the facts or gave an erroneous conclusion drawn from the facts, but later gave a correct instruction as to the law which clearly negated the plain error. We assume the correct instruction was followed. *Wilson v. State,* 261 Md. 551, 570, 276 A.2d 214 (1971);

*Cardin v. State,* 73 Md.App. 200, 233, 533 A.2d 928 (1987), *cert. denied,* 312 Md. 126, 538 A.2d 777 (1988).

B. *The identification*

■ Appellant also claims that the trial judge erred when he instructed the jury "that the eyewitness made an identification of appellant at the time of the crime." Again, we find no error.

During the instructions to the jury, the trial judge said:
There have been at least three identifications of the defendant in this case. One was by photograph. One was by fingerprint evidence, and further the identification in court by the witnesses of the defendant. There may be even a fourth possible eyewitness identification at the time of the event.

Appellant's counsel objected to "a suggestion that the observation of Tina Dove at the time of the alleged offense constitutes a fourth identification."

■ Appellant's counsel argued below and asserts on appeal that Tina Dove's view of appellant at the scene of the crime did not constitute an *identification* because, although she recalled his appearance sufficiently to make both a photographic and in-court identification, she was not aware of his *identity* when she initially saw him. At trial, the State agreed with appellant's counsel; however, both the State and the trial judge concurred with appellant's counsel's remark concerning the "fourth identification": "I think it is semantics." In any event, the trial judge overruled appellant's objection to the above-quoted instructions, and appellant now claims that the failure to give a curative instruction constitutes reversible error. We disagree. We believe appellant's counsel was correct the first time, when he characterized the dispute as a matter of semantics.

In his brief, appellant cites the following definition of "identification":
The proving that a person, subject, or article before the court is the very same that he or it is alleged, charged, or

reputed to be. Identification is almost always a matter of opinion or belief.

42 C.J.S. *Identification* at 374–75 (1944). It is true, of course, that Tina Dove did not identify the man she saw on the morning of the crime by name; however, she identified the physical characteristics of the man she saw. We agree with the State's contention that "[t]he court was using the word [eyewitness] identification to convey the notion that [Ms. Dove] had seen at the time of the crime the person that she later picked out of the photo array and later still identified in court."

*Howard v. State*, 19 Md.App. 673, 313 A.2d 567 (1974), on which appellant relies, is entirely inapposite. In *Howard*, during closing argument the prosecution revealed for the first time the existence of a photographic identification which had not been entered into evidence. This Court held that such a disclosure prejudiced the defendant and warranted a new trial, despite the giving of curative instructions. In the case *sub judice*, the trial judge made no inappropriate disclosure; at all times he referred to evidence properly before the jury. The error, therefore, even if it consisted of anything other than semantics, was harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976).

## III

### *The Sentence*

Section 643B of Maryland Code Ann. art. 27 (1957, 1987 Repl.Vol.) provides, in pertinent part, as follows:

(c) *Third conviction of a crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to

imprisonment for the term allowed by law, but, in any event, not less than 25 years.

■ The term "crime of violence" includes daytime housebreaking under art. 27, § 30(b), burglary, and attempted robbery. Art. 27, § 643B(a). The State bears the burden of proving the validity of prior convictions if the defendant raises that issue. *Middleton v. State,* 67 Md. App. 159, 178, 506 A.2d 1191, *cert. denied,* 308 Md. 146, 517 A.2d 771 (1986). Invalid convictions, of course, do not satisfy the requirements of § 643B. *Raiford v. State,* 296 Md. 289, 295, 462 A.2d 1192 (1983). Neither do out-of-state convictions of crimes which would not be crimes of violence under Maryland law. *Temoney v. State,* 290 Md. 251, 262–64, 429 A.2d 1018 (1981).

In 1984, appellant was convicted in the Circuit Court for Montgomery County of burglary, and a period of incarceration was imposed. In 1979 appellant pleaded either guilty or *nolo contendere* to a charge of attempted robbery in California.[2] A period of incarceration was imposed. It was on the basis of those two prior convictions and corresponding periods of incarceration that the sentence of twenty-five years imprisonment without parole was imposed.

Appellant challenges the legality of his sentence on two grounds. First, he contends that the disposition of the California attempted robbery case was not a conviction for purposes of Maryland Code Ann. art. 27, § 643B. Second, appellant argues that attempted robbery, under California law, is not a crime of violence for purposes of § 643B. We disagree with both contentions.

A. *The nolo contendere plea*

■ Under Maryland law, a plea of *nolo contendere,* or no contest, does not result in a criminal conviction. The

---

**2.** The confusion concerning appellant's plea to the attempted robbery charge arises because appellant's plea is recorded among the California court records in different places as "guilty" and as "*nolo contendere.*" We will treat appellant's plea as *nolo contendere* as did the trial judge.

accused merely asserts that he cannot contest the State's charges and evidence against him and submits himself to punishment. *McCall v. State,* 9 Md.App. 191, 192–94, 263 A.2d 19 (1970). Upon acceptance of the plea, the court proceeds to disposition "as on a plea of guilty, but without finding a verdict of guilty." Md.Rule 4–242(d). Therefore, had appellant's *nolo contendere* plea occurred in Maryland there would have been no conviction for purposes of § 643B.

The validity of a conviction, however, is determined not under Maryland law, but under the law of the jurisdiction in which the conviction was rendered. If a foreign jurisdiction indicates that a conviction is valid, Maryland will recognize that conviction. *See generally, People ex rel Fellman v. Foster,* 184 Misc. 213, 215, 53 N.Y.S. 2d 255, 257 (1945), *aff'd,* 270 A.D. 877, 62 N.Y.S.2d 528 (1946), *aff'd,* 296 N.Y. 954, 73 N.E.2d 265 (1947); *People ex rel Cushing v. Jackson,* 7 A.D.2d 666, 667, 179 N.Y.S.2d 185, 187 (1958) (foreign conviction obtained upon prosecution by information, rather than indictment, must be honored if valid in the foreign state, notwithstanding the fact that such procedure is invalid in New York). We believe the same rule should apply to a determination of what constitutes a conviction.

It is clear that under California law a plea of *nolo contendere* results in a criminal conviction. The California Penal Code Ann. § 1016(3) (1985) provides, in pertinent part:

> [U]pon a plea of *nolo contendere,* the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes.

In *People v. Stewart,* 145 Cal.App.3d 967, 975–76, 193 Cal.Rptr. 799, 803 (2nd Dist.1983), the California Court of Appeal, Second District, approved the following definition of *nolo contendere:* " 'No contest' is the same or equivalent on the criminal side of the court (which this matter is) to a plea of guilty." Because under California law appel-

lant stands convicted of the crime he committed in California, that criminal conviction is valid for purposes of § 643B.

### B. *Attempted robbery*

Appellant also argues that although in Maryland attempted robbery is a crime of violence, in California "attempted robbery" is not necessarily an offense that would be deemed a crime of violence under Maryland law and, therefore, it cannot be used as a predicate offense for the purposes of § 643B.

It is true that:

> The language used by the Legislature in enacting article 27, Section 643B, shows an intent to limit the application of the law to crimes actually involving force or violence. Whether a criminal act constitutes a "crime of violence" must be measured against the Maryland statute, and it matters not whether the particular crime may be a violent act in the foreign state.

*Mitchell v. State,* 56 Md.App. 162, 183, 467 A.2d 522 (1983). We do not hesitate to conclude that the California crime of "attempted robbery" qualifies as an offense recognizable as a crime of violence under Maryland law.

#### 1.

In California, robbery is defined by statute as "the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will, accomplished by means of force or fear." Cal.Penal Code, § 211 (West, 1979, 1988 Supp.). That statutory language closely parallels Maryland's definition of robbery: "[Robbery is] the felonious taking and carrying away of the personal property of another from his person by use of violence or by putting in fear." *Williams v. State,* 302 Md. 787, 792–93, 490 A.2d 1277 (1985) (citations omitted).

The criminal information filed against appellant and his brother in California charged them in one count with unlawful entry into a building and in a second count with "willfully and unlawfully and by means of force and fear [taking]

personal property from the person, possession, and immediate presence of Ruth Little." Appellant pleaded either guilty or *nolo contendere* (*see supra*) to attempted robbery, a lesser included offense under the second count.

The record does not reflect what kind of personal property he attempted to take by force. Seizing on that fact, appellant argues that in *People v. Dillon,* 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697 (1983), the Supreme Court of California expanded the definition of robbery to include the taking of property that under the common law was deemed to be realty. Such conduct, he contends, would not qualify as a crime of violence under § 643B.

In *Dillon,* the accused was convicted of attempted robbery on the basis of proof that he and others armed themselves with a variety of weapons and invaded a field of growing marijuana plants with the intention of making off with the plants after overpowering the men who were guarding the crop. The Supreme Court of California rejected the accused's argument that growing crops could not be the subject of robbery or attempted robbery because at common law they were realty and not personalty. The Court noted that in 1872 the California Legislature adopted a statute redefining detachable fixtures and crops as personal property subject to larceny "in the same manner as if the thing had been severed by another person at some previous time." The statute thus eliminated a rather anomalous distinction artificially created and maintained during early stages of the growth of the common law by judges reluctant to impose the death penalty for the felony of larceny on persons who pilfered growing food or wood for fuel. At common law, a wrongdoer who severed an article from the realty and immediately took it away as one transaction was deemed merely guilty of trespass because the stolen item was never personalty in the possession of the owner, whereas one who first severed the item and later returned to remove it was guilty of larceny. During the lapse of time between severance and removal the item was deemed to be in the owner's possession. *See, Stansbury v.*

*Luttrell,* 152 Md. 553, 137 A. 339 (1927). Lord Hale explained it thus:

> [I]f a man come to steal trees, or the lead of a church or house, and sever it, and after about an hour's time, or so, come and fetch it away, this hath been held felony, because the act is not continuated but interpolated, and in that interval the property lodgeth in the right owner as a chattel . . . .

1 Hale, *Pleas of the Crown,* (1st Am. ed. 1847) at 510$^c$–510$^d$.

The effect of this distinction, as Justice Mosk observed for the Supreme Court of California in *Dillon,* was that

> in a perverse and unintended application of the work ethic, thieves industrious enough to harvest what they stole and to carry it away without pause were guilty at most of trespass, while those who tarried along the way, or enjoyed fruits gathered by the labor of others, faced the hangman's noose.

*Dillon, supra,* 34 Cal.3d, at 458, 194 Cal.Rptr. at 398, 668 P.2d at 705.

The rule limiting larceny to the taking of personalty was logically derived from the undeniable fact that realty, in the sense of land describable by metes and bounds, was incapable of asportation. Because of the severity of the penalty for larceny, that rule was extended to include things attached to but readily severable from land as the definition of "realty" was expanded to include such things for reasons totally unrelated to the criminal law. The problem with that expansion, as was pointed out in *Dillon,* is that the legal fiction that such objects are immovable never prevented thieves from moving them. *Dillon, supra,* 34 Cal.3d at 457, 194 Cal.Rptr. at 398, 668 P.2d at 705.

Reiterating that California, as well as Maryland, adheres to the common law definition of robbery, *i.e.,* the felonious taking and carrying away of the personal property of another from his person (or his immediate presence) by violence or by putting in fear, we agree with the California Supreme Court's assessment of its own holding in *Dillon:*

"We do not hereby expand the definition of robbery." *Dillon, supra*, 34 Cal.3d at 461, 194 Cal.Rptr. at 401, 668 P.2d at 708.

 Except for certain statutes not applicable to this case,[3] robbery is a common law offense in Maryland, basically describable as larceny from the person by force or fear. Therefore, appellant argues, one cannot be guilty of robbery unless the thing taken was of a type of property that was the subject of larceny at common law. We reject that contention. There exist today many kinds of objects— unquestionably personal property—that were unknown to the jurists and lawyers who developed the common law concept of larceny; but it could scarcely be contended that such property could not for that reason be the subject of larceny and, therefore, of robbery. Furthermore, at common law certain types of property, such as a domestic cat or a dog, were considered not to have sufficient value to be the subject of larceny.

As to those animals, which do not serve for food, and which therefore the law holds to have no intrinsic value, as dogs of all sorts, and other creatures kept for whim and pleasure, though a man may have a base property therein, and maintain a civil action for the loss of them, yet they are not of such estimation, as that the crime of stealing them amounts to larceny.

---

3. *See*, Md.Code Ann., art. 27, § 486A, making the robbery of such items as bonds, bills of exchange, or other choses in action, as well as wills or codicils punishable in the same manner as robbery of goods and chattels. That statute, and one in *pari materia* therewith, making the same type of property subject to larceny, were declared in *Kearney v. State*, 48 Md. 16 (1877), to have created offenses unknown to the common law. But even if the common law did not recognize choses in action as property the taking of which would be felonious because they did not have intrinsic value and thus did not import property in the possession of the person from whom they were taken, by the statute of 2 Geo. II, ch. 25, such things were put upon the same footing, with respect to larceny, as the money they were meant to secure. *See*, 4 Blackstone, *Commentaries on the Laws of England*, ch. 17. *See also*, Md.Estates & Trusts Code Ann., § 4–203, which provides that the robbery or larceny of a will shall be punishable in the same manner as robbery or larceny of goods and chattels.

4 Blackstone, *Commentaries on the Laws of England,* 236 (1769).

This refusal of the common law to consider household pets as property of sufficient value to be the subject of larceny was partially rectified by the General Assembly of Maryland when it enacted Chapter 110 of the Acts of 1882, making it larceny to steal (feloniously take and carry away) a dog or bitch; but it was not until the passage of Chapter 169 of the Laws of 1931 that the theft of a cat became larceny. These laws remained part of the criminal code of Maryland, with but slight modification, until repealed by Chapter 849 of the Acts of 1978, whereby the General Assembly enacted the current consolidated theft statute. Md.Code Ann., art. 27, §§ 340–344. By virtue of that statute, the generic term "theft" now encompasses not only larceny but also such former separate offenses as embezzlement, larceny after trust, larceny by trick, shoplifting, false pretenses, and receiving stolen property. § 341. Also by virtue of that statute, almost every type of property imaginable, including real estate and things growing on, affixed to, or found in land or part of or affixed to any building, as well as intangibles such as electricity, services, choses in action, computer software, etc., may be the subject of theft. § 340. We are aware of no Maryland case arising out of a forceful taking and carrying away of a pet dog from the person of its owner after July 1, 1882, or the forceful taking and carrying away of a pet cat from its owner after July 1, 1931, in which it was contended that such larceny by force could not constitute robbery because the property stolen was not subject to larceny at common law. Nor are we aware of any Maryland case since July 1, 1979 (the effective date of the consolidated theft statute), in which the contention was made that the forceful taking and carrying away from its owner of *any* property was not robbery because the property so taken was not subject to larceny at common law. Were such contentions to be made, they should be given but short shrift on the basis that, under Maryland law, it is robbery to steal, take, and carry away, from the

person or the immediate presence of another, by violence or by putting in fear, any property that is subject to larceny (theft by taking and carrying away).

More to the point in this case, we specifically hold that a conviction of robbery or attempted robbery in California, or in any other state that defines robbery substantially as it is defined in Maryland, *i.e.*, the taking or carrying away of the personal property of another, from his person or immediate presence, by violence or putting in fear, is a crime of violence within the meaning of Md.Code Ann. (1957, 1987 Repl.Vol.), art. 27, § 643B, even if such conviction might have been based on taking or attempting to take property that was not deemed personalty under the common law but has been made personalty by statute.

 We believe this holding to be in accordance with the well recognized principle that any property that can be taken by larceny can be taken by robbery. W.R. LaFave and A.W. Scott, Jr., *Criminal Law*, (2d ed) at 777, § 8.11(a)(3).

> Although the pertinent robbery statute is always controlling in respect to the kind of property which may be the subject matter of the crime, it is clear that, since larceny is ordinarily a lesser included offense in robbery, that the kind of property which may be the subject of larceny may also be the subject of robbery.

4 *Wharton's Criminal Law* (14th ed. Torcia) 72, § 481. Indeed, as noted in Clark & Marshall, *A Treatise on the Law of Crimes* (7th Ed.) § 12.11, 885:

> If something that is not the subject of larceny at common law, such as a note or other evidence of a chose in action, is made the subject of larceny by statute, it becomes also the subject of robbery.

So held the Supreme Court of California in *People v. Dillon, supra,* and with that holding we agree.

### 2.

 Having concluded that, for purpose of § 643B, robbery in California is a crime of violence, we turn next to

appellant's contention that under California law one may be convicted of an attempted robbery on the basis of conduct that would not constitute an attempt under Maryland law. We reject that contention as well.

In Maryland, attempt has been defined as follows: "... intent to commit a particular offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation." *Cox v. State*, 311 Md. 326, 330, 534 A.2d 1333 (1988). In California, attempt has been defined by statute as follows:

> An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.

California Pen.Code Ann. § 21a (1988). In *People v. Memro*, 38 Cal.3d 658, 214 Cal.Rptr. 832, 700 P.2d 446 (1985), the Supreme Court of California, in analyzing the "traditional definitions of the crime of attempt," quoted from *People v. Werner*, 16 Cal.2d 216, 105 P.2d 927 (1940), as follows: "to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances." 16 Cal.2d, at 698, 214 Cal.Rptr. at 860, 700 P.2d at 474. The Court also noted, however, that where specific intent is "... clearly shown, slight acts done in furtherance of that design will constitute an attempt." *Memro, supra*, 38 Cal.3d at 698, 214 Cal.Rptr. at 860, 700 P.2d at 474 (quoting *People v. Fiegelman*, 33 Cal.App.2d 100, 105, 91 P.2d 156, 158 (1939)) (other citations omitted).

Appellant would have us isolate the second quotation from *Memro* and conclude that in California attempt includes conduct—"slight acts done in furtherance"—that would not constitute an attempt under Maryland law. We decline to do so. We interpret the phrase upon which appellant relies as referring to the level of proof required to show that an act was done in furtherance of a criminal intent, rather than the level of conduct required to elevate mere intent to attempt. A complete reading of *Memro* makes it clear that in California, as in Maryland, an attempt

requires *some* action in furtherance of a crime beyond mere preparation; if there is any significant distinction, *more* action may be required under California law than under Maryland law where specific intent is not otherwise proven —an act that "would result in the accomplishment of the crime unless frustrated by extraneous circumstances," *Memro, supra,* rather than just any overt act "which goes beyond mere preparation." *Cox, supra.*

We conclude, therefore, that in California attempted robbery is an offense that would constitute a crime of violence under Md.Code Ann., art. 27, § 643B. Consequently, since appellant was convicted of burglary in Maryland and, whether his plea was "guilty" or *"nolo contendere,"* of attempted robbery in California, in addition to the conviction in this case, we find no error or illegality in the imposition of the twenty-five year sentence without parole pursuant to § 643B.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.