556 A.2d 285

**Darrell Eldon BROWN**

v.

**STATE of Maryland.**

**No. 1252 Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 5, 1989.

---

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before BLOOM, ROSALYN B. BELL and FISCHER, JJ.

FISCHER, Judge.

Darrell Eldon Brown was convicted by a jury in the Circuit Court for Baltimore County of first degree rape, first degree sex offense, use of a handgun in the commission of a crime of violence, burglary, and two counts of robbery with a deadly weapon. He was sentenced to a total of fifty years imprisonment. Appellant now queries whether the court erred in admitting his statement purportedly obtained in violation of the Fifth and Sixth Amendments.

On April 14, 1986, Officer Nelson Parker learned that a suspect, shot during the commission of a crime, was receiving treatment in a Baltimore County hospital. Because the circumstances of that crime were similar to others Officer Parker was investigating, he attempted to interview the suspect. The officer's effort was in vain, however, as the suspect, appellant herein, declined to discuss the matter, claiming that his lawyer instructed him not to speak with anyone. Officer Parker left his telephone number in case appellant or his attorney should decide to contact him.

Later that day, Officer Parker received a call from someone, apparently appellant's counsel. The attorney thanked Officer Parker for not interviewing his client and added that he would "have to deny any interview."

Officer Parker's next contact with appellant occurred on July 18, 1986. At that time, appellant was in the Baltimore County Detention Center, under arrest for these crimes. The officer intended to serve appellant with warrants in two other cases and interview him on all the pending matters, including the instant charges. Before commencing the interview, Officer Parker advised appellant of his *Miranda* rights and gave him an opportunity to call his lawyer. Appellant stated he understood his rights and did not need to speak with counsel. Appellant then waived his rights, and the interrogation commenced.

During the course of their conversation, appellant made an inculpatory statement which is an issue in this appeal. Appellant now claims that his statement is inadmissible under the dictates of the Fifth and Sixth Amendments.

Preliminarily, we note that the Fifth Amendment issue was not raised below. As the transcript of the suppression hearing indicates, appellant's motion was based solely on the Sixth Amendment:

> [STATE'S ATTORNEY]: Your Honor, at first when I anticipated this, I thought the problem, as did [defense counsel], was much more complex than I really believe it is now. I think primarily there are two directions that this argument could take; a Fifth Amendment argument and a Sixth Amendment argument. I think that—
>
> THE COURT: Excuse me. I don't think we have a Fifth Amendment problem. The problem is the Sixth Amendment. I don't know if [defense counsel] would agree, but there's no Fifth Amendment problem that I see.
>
> [DEFENSE COUNSEL]: I think that's a correct position, Your Honor.

In light of this exchange, we exercise our discretion and decline to address the Fifth Amendment issue. Maryland Rule 8–131.

In *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Supreme Court ruled that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." The Court, in *Solem v. Stumes*, 465 U.S. 638, 641, 104 S.Ct. 1338, 1340, 79 L.Ed.2d 579 (1984), reiterated the *Edwards* bright-line rule that "once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him." This rule was found equally applicable to Sixth Amendment situations in *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986).

The Sixth Amendment right to counsel guarantees the assistance of an attorney at post-arraignment interrogations. *Jackson*, 475 U.S. at 629, 106 S.Ct. at 1407. This is true because the arraignment "signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment, *United States v. Gouveia*, 467 U.S. 180, 187, 188, 81 L.Ed.2d 146, 104 S.Ct. 2292 [2297] (1984); thereafter, government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies." (citations omitted.) *Jackson*, 475 U.S. at 629–630, 106 S.Ct. at 1407.

In the case *sub judice*, Brown was arraigned on June 30, 1986. The docket entries reflect that Brown informed the court he retained counsel, "Mr. R. Walker." On the same day, Roland Walker entered his appearance on behalf of appellant. Certainly the State was aware of Brown's desire to be represented by counsel and his assertion that he had, in fact, already hired an attorney. This was confirmed by counsel's entry of appearance. These facts reveal two key occurrences on June 30, 1986; the commencement of adversary judicial proceedings triggering appellant's Sixth Amendment right to counsel, and appellant's invocation of his right to counsel.[1]

▆▆▆▆ Whether the interrogating officer was aware of what transpired during the arraignment is inconsequential. "One set of state actors (the police) may not claim ignorance of [a defendant's] unequivocal request for counsel to another state actor (the court)." *Jackson*, 475 U.S. at 634, 106 S.Ct. at 1410. Simply phrased, the police are responsible to know of and respond to such a request. *Id.* at 635, 106 S.Ct. at 1410. This is also true of the officer questioning Brown on July 18, 1986.

---

1. The right to counsel does not hinge on appellant's request for a lawyer. Instead, his request is "an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation." *Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409.

Once a defendant requests a lawyer, subsequent advisement of constitutional rights followed by acquiescence in police-initiated questioning cannot establish a valid waiver of the Sixth Amendment right to assistance of counsel. *Jackson,* 475 U.S. at 635, 106 S.Ct. at 1410. "Just as written waivers are insufficient to justify police initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too are they insufficient to justify police initiated interrogations after the request for counsel in a Sixth Amendment analysis." *Id.* Brown's oral waiver was likewise insufficient.

In *Brewer v. Williams,* 430 U.S. 387, 51 L.Ed.2d 424, 97 S.Ct. 1232 (1977). Where, as in *Massiah v. United States,* 377 U.S. 201, 12 L.Ed.2d 246, 84 S.Ct. 1199 (1964), the Sixth Amendment right to counsel had accrued, the Court held that a valid waiver of counsel rights should not be inferred from the mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In *Massiah* and *Brewer,* counsel had been engaged or appointed and the admissions in question were elicited in his absence. *Edwards v. Arizona,* 451 U.S. at 484 n. 8, 101 S.Ct. at 1885 n. 8.

The State likens the scenario here to that in *Michigan v. Mosely,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Mosely,* the defendant was arrested for robbery and was interrogated after receiving *Miranda* warnings. When Mosely declined to answer any questions, the conversation ceased. Approximately two hours later, a different officer approached Mosely about his involvement in a murder. At that time, Mosely was not under arrest·for the murder. The second officer again informed Mosely of his *Miranda* rights prior to questioning. During their conversation, Mosely gave a statement implicating himself in the homicide. That statement was the subject of a motion to suppress during the murder trial.

The Supreme Court held that the statement was admissible. Noteworthy was the fact that Mosely received *Mi-*

*randa* warnings before each period of questioning. The Court also pointed to the time lapse between the sessions. Of special significance, however, was the fact that the second officer questioned Mosely about the homicide. The second crime was unrelated to the first, and the officer in no way attempted to resume interrogation on the robbery or persuade Mosely to reconsider his position. The Court opined:

> This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Michigan v. Mosely,* 423 U.S. at 105–106, 96 S.Ct. at 327–328.

*Mosely* is inapposite to the instant case. We are faced with police-initiated questioning violative of the Sixth Amendment right to counsel. Under these facts, the court erred in admitting Brown's July 18, 1986 statement.

■ Alternatively, the State claims that such error was harmless. The Court of Appeals, in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976), enunciated the following test:

> We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must be satisfied that there is no reasonable possibility—that the evidence complained of whether errone-

ously admitted or excluded—may have contributed to the rendition of the guilty verdict.

We are not so convinced. While the victim's identification of Brown coupled with her identification of a sawed-off shotgun recovered from Brown as the one used during the crime are compelling, we are not satisfied that there exists no "reasonable possibility" that Brown's statement may have contributed to the guilty verdict. Consequently, a new trial is warranted.

JUDGMENT REVERSED.

COSTS TO BE PAID BY BALTIMORE COUNTY.