568 A.2d 1150

**Hrangsote ·DARRIKHUMA**

**v.**

**STATE of Maryland.**

**No. 672, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 5, 1990.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before MOYLAN and CATHELL, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (retired), Specially Assigned.

CATHELL, Judge.

On appeal from his conviction for the offense of driving while intoxicated, appellant asserts that the trial court made three errors that mandate reversal. Those alleged errors are:

1. The court below erred in denying appellant's motion to dismiss the charging document because appellant had not properly been served with it.
2. The court below erred in allowing into evidence the results of a breathalyzer test, where the record shows that said test was consented to by appellant without adequate knowledge of his rights.
3. The court below erred in limiting appellant in his cross-examination of a key State's witness.

### Facts

Mr. Darrikhuma was arrested and charged with driving while intoxicated and other charges. After the roadside accosting was completed, the appellant was transported to a Maryland State Police installation for processing. That processing included chemical testing as provided by statute. At the installation appellant was given what is commonly referred to as his DR–15 advice of rights. Included in that advice was a litany that informed him that he had the right to additional chemical alcohol testing by a physician of his own choice after the test performed by the police technician.

At trial Darrikhuma moved for dismissal alleging that the citation had not been properly served in that it had been served on him by a District Court Commissioner, and that such service was improper. On appeal we are informed by the appellee that "the prosecutor elected not to present evidence that Woods, the apprehending officer, did effect service so that the trial court could rule on the legal question of service by a District Court Commissioner."

### The Law

#### 1.

Maryland Code (1987 Repl.Vol., 1989 Cum.Supp.), § 26–201 of the Transportation Article provides:

(a) *Authority of police officer to charge.*—A police officer may charge a person with a violation of any of the following ...:

(1) The Maryland Vehicle Law, including any rule or regulation adopted under any of its provisions ....

(b) *Issuance of citation.*—A police officer who charges a person under this section shall issue a written traffic citation to the person charged.

Maryland Code (1984 Repl.Vol.), § 2-605(b) of the Courts and Judicial Proceedings Article provides:

(b) *Criminal and traffic process.*—*All* criminal and traffic process, including warrants and summonses for witnesses, shall be served by the constables ..., or by the sheriffs ... or by State or local police as the administrative judge of the district shall direct.... [emphasis added]

Rule 4-102 of the Maryland Rules provides:

(b) **Citation.**—"Citation" means a charging document, other than an indictment, information, or statement of charges, issued to a defendant *by a peace officer* or other person authorized by law to do so. [emphasis added]

Rule 4-212(h) provides, "The person issuing a citation, other than for a parking violation, *shall* serve it upon the defendant at the time of its issuance." (emphasis added)

We have not been directed by the parties to any Maryland case, statute or Rule that expressly authorizes a District Court Commissioner to serve traffic citations on defendants. We have found none and what we have found indicates to the contrary.

The leading case on the subject appears to be *State v. Preissman,* 22 Md.App. 454, 323 A.2d 637 (1974). There the sole question was whether a District Court Commissioner had the power to serve process where a defendant was charged with Housing Code violations of a criminal nature.

The pertinent section of the Maryland Code in effect at the time stated *"[a]ll criminal and traffic process, including warrants ... shall be served by the sheriffs ... or by State or local police as shall be determined by rule." Id.*

at 457–58, 323 A.2d 637 (emphasis in original). Then Maryland District Rule 706(f)(1) provided that a summons could be served by any officer authorized by law to execute a warrant.

We said in *Preissman* at 458–59, 323 A.2d 637:

Although it is singularly unlikely the legislature contemplated the situation presented here ..., the section appears on its face to establish the exclusive methods by which ... criminal process shall be served. It is evident that the legislature intended to reserve the latter task to persons specially trained for the difficulties that could arise in connection therewith....

The State contends ... the defective service ... "was not fatal to the charges ...," since where a person is before a court under process legally issued by a court of that jurisdiction, the jurisdiction of the court over his person is not affected by the manner in which he was brought before it. The State's reliance on this rule is misplaced, however, because process is not legally issued until it has been ... placed in the hands of a person authorized to serve it with the intention of having it served. [citations omitted]

We have recently referred to *Preissman* in *Village Square v. Crow–Frederick*, 77 Md.App. 552, 562, 551 A.2d 471 (1989), saying "If the language is plain and free of ambiguity, and has a definite and sensible meaning, such is conclusively presumed to be the intent of the Legislature in enacting the statute."

The appellee declares to us that the holding in *Preissman* has been modified as a result of rule changes and refers primarily to the present form of Maryland Rule 4–212(b). Rule 4–212(b), however, expressly excludes its application to citations by stating "[u]nless ... the charging document is a citation ...." This exclusion is further illustrated by Rule 4–212(h), which provides, as we have said, that a citation must be served by the person issuing same. This requirement is in no way eliminated by the provision in Maryland

Rule 4–213(a)(1) which requires a judicial officer to give a defendant, at initial appearance, "a *copy* of the charging document if *the defendant does not already have one and one is then available....*" (emphasis added) The purpose of a Rule 4–213 "Initial Appearance" is not to effectuate service of a citation, but to insure that an *already arrested or summonsed* defendant is afforded "the full panoply of safeguards...." *Davis v. State,* 42 Md.App. 546, 557, 402 A.2d 77 (1979) (referring to M.D.R. 723, the predecessor rule to Maryland Rule 4–213). Rule 4–213 does not confer upon a District Court Commissioner authority to serve citations.

The appellee directs our attention to *State v. Smith,* 305 Md. 489, 505 A.2d 511 (1986), in support of its position that *Preissman* is not applicable to the case at bar. *Smith* is in fact inapposite. There the primary question concerned the powers of commissioners to issue statements of charges they were by statute and rule explicitly authorized to issue. The trial judge had determined that commissioners had "no constitutional power to issue and sign a 'Statement of Charges,'" basing his finding on the separation of powers doctrine and constitutional due process of law considerations. *Id.* at 493, 505 A.2d 511. The Court of Appeals, discussing the constitutional aspects, stated: "[w]e conclude that the issuance of statements of charges by commissioners of the District Court of Maryland, *as permitted by the Maryland Rules,* is not proscribed as denying due process of law." *Id.* at 521, 505 A.2d 511 (emphasis added). The Maryland statutes and rules do not permit the service of citations by Commissioners. Thus, *Smith* has little applicability to the case sub judice.

■ The trial judge stated in the present case: "I say *Priceman* [sic] doesn't apply to this case." He was in error. We hold that generally a District Court Commissioner has no authority to effectuate personally the actual service of traffic citations upon defendants.

We note that the record discloses that the arresting officer apparently was present during the proceedings, and thus there may well have been an opportunity for proper service even at that late date. It appears that the prosecutor intentionally chose not to attempt to assert or effect correct service in order to get another ruling that service by the commissioner is proper. (Another judge in Anne Arundel County had, according to the prosecutor, already ruled in the State's favor on this issue in this case.)

A similar situation i.e., refusal by the prosecutor to make corrections, occurred in *State v. Romulus*, 315 Md. 526, 555 A.2d 494 (1989), where the prosecutor refused to sign an amended information after the trial judge brought a signature defect to his attention. When he refused to correct the information, the trial judge dismissed it. The Court of Appeals, in affirming the trial court's dismissal in *Romulus*, stated at p. 539, 555 A.2d 494, "[s]o, in Maryland, the omission of a required signature from a pleading is considered a mere irregularity or formal defect which can be remedied."

We likewise point out that the defect of service in this case was a remediable defect, except that the prosecutor chose not to remedy it. By engaging in what must have been the whetting of his intellectual curiosity, the prosecutor has unnecessarily caused another issue to be appealed to this Court at a time when our resources are already fully being utilized. In so doing he has caused us to expend our finite resources in a somewhat extensive mental and logical gymnastic exercise to resolve a matter which could have and should have been resolved in seconds at the trial level.

We now address whether the error was harmful and thus requires reversal.

The case of *Noble v. State*, 293 Md. 549, 446 A.2d 844 (1982), involved, in part, the absence of a defendant during a portion of the jury voir dire in violation of then Maryland

Rule 724.[1] The Court of Appeals stated at 557–58, 446 A.2d 844:

> This Court has firmly adhered to the principal that the rules of procedure are precise rubrics to be strictly followed, and we shall continue to do so. A violation of one of these rules constitutes error, normally requiring such curative action or sanction as may be appropriate.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> It does not follow, however, that the harmless error doctrine has no application to the Maryland Rules and that a violation of a procedural rule can never be harmless. There is no basis in authority or logic for such a holding. It is true that the violations of certain rules, because of the nature and purpose of those particular rules, can rarely be deemed harmless error. Some examples include Rule 723(c)(d)(e) (waiver of right to counsel); Rule 731(c) (acceptance of guilty plea); Rule 735(d) (waiver of right to jury trial); Rule 746 (speedy trial). Nevertheless, this Court has not held that the harmless error principle can never be applicable to a violation of the criminal rules.

That Court then gave examples of certain rule violations that had constituted harmless error. In discussing a sequestration rule violation in *Johnson v. State*, 283 Md. 196, 203, 388 A.2d 926 (1978), the Court of Appeals stated, " 'the error of the trial court was harmless beyond a reasonable doubt, *in no way contributing to the conviction.*' " *Noble, supra* [294 Md.] at 558, 446 A.2d 844 (emphasis added).

The seminal case stating the test or standard for our review of whether harmless error was committed in this case is *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976). The Court of Appeals stated at p. 659, 350 A.2d 665:

> We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a

---

1. Former Maryland Rule 724 is now encompassed in new Maryland Rule 4–231.

belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless".... Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict. [footnote omitted]

Virtually all of the cases we have reviewed in which the appellate courts of this State have found the error not to be harmless under the *Dorsey* standard, involved errors of commission or omission that were trial oriented and thus more likely to contribute to a verdict. See *Wiggins v. State*, 315 Md. 232, 554 A.2d 356 (1989) (AIDS protection); *Bohnert v. State*, 312 Md. 266, 539 A.2d 657 (1988) (sex abuse expert testimony); *Wright v. State*, 312 Md. 648, 541 A.2d 988 (1988) (where the jury was erroneously told that the defendant had entered a guilty plea); *Trusty v. State*, 308 Md. 658, 521 A.2d 749 (1987) (evidence erroneously admitted); *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (1987) (where hearsay evidence was erroneously admitted and considered in the rendering of a verdict); *Brown v. State*, 79 Md.App. 163, 556 A.2d 285 (1989) (tainted statement); *Hemingway v. State*, 76 Md.App. 127, 556 A.2d 285 (1988) (testimonial limitations); *Brown v. State*, 74 Md.App. 414, 538 A.2d 317 (1988) (cross-examination limitation).

 As is readily apparent, the error of the trial and motions judges in the present case in denying the motion to dismiss in no way compares with the types of errors the appellate courts of this State have said may have contributed to verdicts. Furthermore, a brief review of just a few cases in which the appellate courts have found harmless error under the *Dorsey* standard indicates that even they had a much greater likelihood of contributing to a verdict then did the error in the instant case. They include *Mills v. State*, 310 Md. 33, 527 A.2d 3 (1987), *sentence vacated*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), where character evidence was omitted. The Court said [310 Md.] at 48–49, 527 A.2d 3:

In light of the overwhelming evidence of the defendant's guilt and the nature of his crime, it is virtually inconceivable that the view of a fellow inmate, who was the defendant's uncle, that the defendant has previously been nonviolent in the institution, might have changed the guilty verdict. We are convinced, "beyond a reasonable doubt, that the error in no way influenced the verdict . . . ." [citation omitted]

The subsequent conviction case of *King v. State*, 300 Md. 218, 477 A.2d 768 (1984), involved the State making a deficient notice under then Maryland Rule 734 when the State was seeking an enhanced penalty. That Court said:

Against this standard, the State's notice in this case clearly is deficient . . . . *Id.* at 231, 477 A.2d 768.

\* \* \* \* \* \*

The determination that the notice was inadequate . . . does not in any way preclude our holding that, under the facts of this case, the error was harmless beyond a reasonable doubt. . . . Given that there was full knowledge of the nature and circumstances of the prior conviction despite the inadequate notice, the appellant was not in any way hampered in his ability either to decide whether to plead guilty or proceed to trial, or having elected a jury trial, in presenting and preparing his defense. . . . *Id.* at 232, 477 A.2d 768.

*See also Wildermuth v. State*, 310 Md. 496, 530 A.2d 275 (1987) (involving an inappropriate testimonial exchange); *Chase v. State*, 309 Md. 224, 522 A.2d 1348 (1987) (where the record did not disclose the defendant's presence during part of a revocation hearing); *Stancil v. State*, 78 Md.App. 376, 553 A.2d 268 (1989) (overwhelming evidence); *Bullock v. State*, 76 Md.App. 85, 95, 543 A.2d 858 (1988) (prior inconsistent statement); *Hubbard v. State*, 76 Md.App. 228, 544 A.2d 346 (1988) (where the trial judge made a possible error in commenting on the number of identifications); *Cardin v. State*, 73 Md.App. 200, 533 A.2d 928 (1987) (questions relating to unadmitted documents).

Unlike the situation in *Preissman*, process was legally issued by the arresting officer in the instant case, as is evidenced by his signature. It was thus obviously in his own hands at that time. He was at that time authorized to serve it.[2] The error thereafter occurred in its actual service. As we read the facts of *Preissman*, it appears that the process had never been validly issued and placed into the hands of a person then authorized to serve it. We thus distinguish that portion of *Preissman* that held that Preissman was not within the jurisdiction of the court.

Had the defendant in the present case not appeared for trial the court would have been without power to sanction him for any such nonappearance. By appearing pursuant to a validly issued but improperly served citation and defending himself against this charge, he was before a court with jurisdiction over the charge and, because of the valid issuance of the citation and voluntary appearance, over the person. Unlike *Preissman*, the error in the case at bar was not inherently fatal.

We now examine the trial situation that resulted from the trial court's error in the instant case. Our examination of the record reveals: (1) that the arguments on the motion to dismiss did not take place in the presence of the fact finder; (2) the irregular service of the citation had no effect on the proof or offers of proof at trial; (3) that the actual identity of the defendant was never at issue; (4) there was no allegation by appellant that the nature of the charges had in any way been affected by the defective service; (5) there was no evidence that the defective service in any way interfered with the appellant's preparation of a defense or

---

**2.** Maryland Code (1987 Repl.Vol., 1989 Supp.), § 26–409(a) of the Transportation Article provides that a traffic citation is a sufficient charging document for the prosecution of any offense if:

(1) It includes the information required under the laws of this State;

(2) It is signed by the police officer issuing the citation; and

(3) It is filed with the District Court.

The citation at issue fully complies with these requirements as well.

in the defense; (6) that it in no way interfered with his right to summons and present witnesses, in direct or cross-examination of witnesses, in discovery, in the requesting of and exceptions to instructions, the selection of the jury, opening statements and/or closing arguments. The error clearly had absolutely no impact upon the jury and thus did not contribute to the verdict. Thus under *Dorsey* it was harmless error beyond a reasonable doubt.

2.

We now address the second allegation of error raised by appellant.

The holdings in *Sites v. State*, 300 Md. 702, 717–18, 481 A.2d 192 (1984), and *Brosan v. Cochran*, 307 Md. 662, 516 A.2d 970 (1986), read together, simply provide that a person arrested for drunk driving has a right to consult with an attorney prior to formulating a decision on whether or not to take a breathalyzer test—*if that person makes such a request to consult with an attorney.* Those cases hold that in any such consultation the attorney has the right to utilize his own breathalyzer test, and such a test is an attorney and client communication.

■ Darrikhuma is not claiming that his request to consult with an attorney was denied, or that he was denied the right to utilize a preliminary test. Instead, he asserts that his due process rights have been unconstitutionally denied him because the advice read to him (the so-called DR–15 rights) was misleading in that it did not adequately inform him that he had a right to a preliminary test performed by a person of his choice before deciding whether to take a police administered test.[3]

---

**3.** The DR–15 rights read to appellant are virtually the same as those read to the defendant in *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984), the seminal Maryland case on this issue, except for certain changes necessarily incorporated to reflect statutory changes as to admissibility of refusals, and types of tests. Such changes have no bearing on our decision in the case at bar. The DR–15 Rights form read to the defendant in *Sites* is set out in footnote 1 at pages 707 and 708, 481 A.2d 192 of that case.

The DR–15 Rights form read to Sites contained this phrase:

> That after submitting to a chemical test administered at the request of the arresting officer, you may also have a physician of your choice to administer a chemical test in addition to the one administered at the direction of the police officer....

*Id.* [300 Md.] at 708, n. 1, 481 A.2d 192. The appellant in the case sub judice had the identical phrase read to him. He complains, however, that by advising him that he could have his own test administered *subsequent* to the test administered at the police officer's request, the police improperly implied that he did not have the right to have his own test administered *prior* to the test administered at the police officer's request.

He asserts on appeal, and states he so argued below, that such advice carried the definite implication that it would not be possible for him to have a prior test. He asserts in his brief that:

> [T]he police certainly could not properly affirmatively mislead the suspect with regard to whether he has the right to consult with anyone [lawyer] before deciding whether to take a breathalyzer test.

He may be right. But appellant evades the issue. The police did not affirmatively mislead the defendant about his right to a preliminary test. They merely affirmatively properly advised him of his subsequent test rights.

The defendant in *McAvoy v. State,* 314 Md. 509, 551 A.2d 875 (1989), was read a statement concerning his post police-test rights that was identical with the statement given to appellant in the case at bar. The Court of Appeals stated:

> This does not end our inquiry, however, because McAvoy has also cast the question of his entitlement to be informed of the right to counsel in another light. Drawing on our holdings in *Brosan v. Cochran,* 307 Md. 662, 516 A.2d 970 (1986), and *Sites v. State,* 300 Md. 702, 481 A.2d 192 (1984), McAvoy argues that ... it follows that

the results of a test cannot be admitted unless the record shows the defendant had counsel or voluntarily and intelligently waived the right to counsel. Further, he says, an intelligent waiver of counsel is dependent upon prior advice of the existence of that right, and thus *Miranda*-like advice of the right to counsel is required. The argument, though interesting, is flawed. We recognized in *Sites* neither a right of counsel in the Fifth nor Sixth Amendment sense, but rather a deprivation of the right of due process by the unnecessary denial of a *specific request* for counsel. The difference is significant, and dispositive of this question.

The right that McAvoy did enjoy at that point was the right not to be unreasonably refused counsel *when requested* by him. *Id.* [314 Md.] at 519, 551 A.2d 875. [emphasis added]

* * * * * *

McAvoy did enjoy the due process rights we recognized in *Sites* and refined in *Brosan*. Those rights did not, however, entitle him to advice of his right to counsel, nor to termination of testing activity until the appearance, or waiver, of counsel.... *Id.* at 520, 551 A.2d 875.

Mr. Darrikhuma asks us to extend the holdings of *Sites* and *Brosan* beyond the boundaries established in those cases. He apparently asserts that either the officers should have formally advised him of the holdings in *Sites* and *Brosan* or should not have advised him that he would have a right to his own breathalyzer test after the police completed their tests.

We decline to so extend the limits of the *Sites* and *Brosan* holdings. In so deciding we are especially cognizant of the fact that the Court of Appeals in *McAvoy*, in discussing *Sites*, described that prior holding in terms of the denial of specific requests for counsel and declined the opportunity, unequivocally offered it, to expand those prior holdings to require the police to affirmatively advise a defendant of his right to counsel and to require the police to

obtain a waiver of counsel from a defendant prior to the breathalyzer testing.

We also resist the temptation sophistically offered by appellant to hold that, by correctly furnishing a defendant information as to his rights at a future point in time, the police are interfering, in a due process sense, with his rights at a present time. This temptation is especially resistible when the holdings of *Brosan, Sites,* and *McAvoy* have never mandated that the police give any specific advice on the points at issue in the case at bar.

The trial court did not err in admitting the breathalyzer results into evidence.

### 3.

We first note that even if Officer Smith had been qualified as an expert the admissibility of his testimony would have been subject to:

> Whether the jury will be aided by the opinion, not whether the jury could draw the inference or conclusion from the testimony independent of the opinion.

> \* \* \* \* \* \* )

> [A] trial judge is given broad discretion in ruling on the admissibility of expert testimony. Seldom will the decision in this regard constitute grounds for reversal.

*Simmons v. State,* 313 Md. 33, 43, 542 A.2d 1258 (1988). In the case at bar appellant's counsel was attempting to elicit expert testimony from an unqualified witness.

■ It is clear that appellant's questioning of the officer went far beyond the area of his technical competency. The line of questioning objected to by the State was not directed at the time of the test, the procedures used, the qualifications of the officer, the certifications of the machinery, etc. The questions instead were directed at definitions of "deep lung air ratios"; the operational theories of the machine, the effect an individual's blood ratio input might have on results, "radio frequency effects," "mouthwash effects," etc. They were expert witness questions and the witness

was not an expert. The judge had discretion to allow or disallow the testimony at issue.

Darrikhuma argues in his brief that:

It is clear that counsel was attempting to elicit testimony in support of an argument that a conclusion as to blood-alcohol level, as determined by the results of a breathalyzer test, is not necessarily always accurate. It is further clear that counsel had the right to probe for such testimony.

Appellant had the correct law but the wrong witness. We perceive no error in the trial court's sustaining of the State's objection to the admissibility of such testimony from Officer Smith.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.